1  Torryn Taylor Rodgers, Bar No. 319126
   TRodgers@perkinscoie.com
2  PERKINS COIE LLP
   505 Howard Street, Suite 1000
3  San Francisco, California 94105
   Telephone: 415.344.7000
4  Facsimile:  415.344.7050

5  Robert A. Burgoyne (admitted *pro hac vice*)
   RBurgoyne@perkinscoie.com
6  PERKINS COIE LLP
   700 Thirteenth Street, N.W., Suite 800
7  Washington, D.C. 20005-3960
   Telephone: 202.654.6200
8  Facsimile:  202.654.6211

9  Attorneys for Defendants
   NATIONAL BOARD OF MEDICAL EXAMINERS,
10 and FEDERATION OF STATE MEDICAL BOARDS, INC.

11 Eric G. Young, Bar No. 190104
   eyoung@younglawca.com
12 YOUNG LAW GROUP
   411 Russell Avenue, Second Floor
13 Santa Rosa, California 95403
   Telephone:  707.527.3637
14 Facsimile:  707.289.8059

15 Attorneys for Plaintiff
   CORNELL WELLS, JR.

16

                    UNITED STATES DISTRICT COURT
17
                   NORTHERN DISTRICT OF CALIFORNIA
18

19

   CORNELL WELLS, JR.,                    Case No. 3:21-cv-01279-JSC
20
              Plaintiff,                   **JOINT CASE MANAGEMENT
21                                         STATEMENT**
        v.
22                                         Date:     August 12, 2021
   NATIONAL BOARD OF MEDICAL              Time:     1:30 p.m.
23 EXAMINERS, a not-for-profit corporation, Judge:    Hon. Jacqueline Scott Corley
   FEDERATION OF STATE MEDICAL
24 BOARDS, INC., a not-for-profit corporation,

25            Defendants.

26

27

28

1

2

**1.     JURISDICTION & SERVICE**

Plaintiff's/Defendants' Agreed Position:

All parties have been served.  There are no issues regarding personal jurisdiction or venue.

Dr. Wells's claims relate to his prior requests for testing accommodations on Step 3 of the United States Medical Licensing Examination ("USMLE"), and are asserted under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189 and the California Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh").  He seeks injunctive relief requiring defendants to provide him with his requested accommodations on the Step 3 examination and monetary damages and statutory penalties under the Unruh Act.

Plaintiff's Position:

Since this lawsuit was filed, Dr. Wells sat for Step 3 of the USMLE for the fifth time without disability accommodations. Statistically, Dr. Wells did not perform better on this fifth attempt than he did on his prior attempts. However, for reasons unknown, Dr. Wells passed Step 3 when a similar past performance resulted in him failing the examination. Dr. Wells contends that his claims under the ADA and Unruh are not rendered moot merely because he passed Step 3 without accommodations. Subject matter jurisdiction remains appropriate with this Court to adjudicate the issues explained more fully herein.

Defendants' Position:

It is Defendants' position that Dr. Wells's ADA claim and his requests for injunctive relief are moot, and the Court therefore lacks subject matter jurisdiction over such claims, because Dr. Wells has now taken and passed the Step 3 under standard testing conditions.  Monetary damages are not available under Title III of the ADA.

**2.     FACTS**

Plaintiff's Statement of Relevant Facts:

Dr. Wells attended medical school at Albert Einstein College of Medicine from 2005-2012, where he graduated M.D./M.S. While at Albert Einstein College, Dr. Wells received testing accommodations for examinations. He also received neuropsychological testing during his third

-2-

year and was diagnosed with ADHD. Dr. Wells received accommodations for graduate school exams and NBME Medicine "Shelf Exams." Shelf exams are written by Defendant NBME and consist primarily of retired questions from the USMLE. Dr. Wells' accommodations consisted of of 1.5 additional time and a separate testing room. Dr. Wells passed his exams with accommodations and graduated from medical school.

As is customary in the medical profession, during his time at medical school, Dr. Wells sat for part of the USMLE. The USMLE is a nationwide test administered to physicians and consists of components called "Steps." Dr. Wells took Step 1 on July 12, 2008 and passed that portion of the USMLE. On January 25, 2012, Dr. Wells took Step 2 CS and also passed that portion of the USMLE.

On February 4, 2012, Dr. Wells took Step 2 CK of the USMLE and failed. He retook Step 2 CK on March 24, 2012 and passed. Dr. Wells undertook his residency in psychiatry during this time in 2012 at the California Pacific Medical Center.

On April 14, 2014, Dr. Wells attempted to take Step 3 of the USMLE for the first time. Step 3 of the USMLE is the final examination in the USMLE process. Step 3 is a two-day examination. The first day of testing includes 232 multiple-choice items divided into 6 blocks of 38-39 items; 60 minutes are allotted for completion of each block of test items. There are approximately 7 hours in the test session on the first day, including 45 minutes of break time and a 5-minute optional tutorial.

The second day consists of approximately 9 hours of testing, consisting of 180 multiple-choice items, divided into 6 blocks of 30 items; 45 minutes are allotted for completion of each block of test items. This is followed by 13 case simulations, each of which is allotted a maximum of 10 or 20 minutes of real time. A minimum of 45 minutes is available for break time.

Both days of Step 3 require considerable time management skills, ability to critically think under pressure, and high levels of executive functioning. When Dr. Wells attempted Step 3 on April 14, 2014, he failed the examination. Dr. Wells took Step 3 in April 2014 without accommodations.

153331931.1

1    Dr. Wells attempted Step 3 again on June 1, 2014. In July 2014, the official score reports

2  of the USMLE were transmitted in the normal course of events to the Medical Board of

3  California ("Medical Board"). Dr. Wells was granted his medical license by the Medical Board.

4  This would later turn out to have been granted in error by the Medical Board, which was

5  discovered during a purported audit.

6    Dr. Wells went on to complete his residency in psychiatry in 2016. From 2016-2018, he

7  was a staff psychiatrist at Kaiser Permanente, Southern California Permanente Medical Group.

8  During this time, no one complained about Dr. Wells' performance, and he did not incur any

9  negative actions of any kind against himself or his license. In October 2018, Dr. Wells became

10  board certified in psychiatry.

11    From 2018-December 2019, Dr. Wells worked as a board-certified psychiatrist at Pacific

12  Coast Psychiatric Associates. Once again, Dr. Wells was not the subject of any complaints or

13  negative actions against his license.

14    In March 2019, Dr. Wells received a letter from the Medical Board informing him that an

15  error had been made in issuing his medical license, and that he had failed Step 3 of the USMLE in

16  June 2014. Dr. Wells was advised that his license would remain active, but that he needed to re-

17  take Step 3 as soon as possible. Perhaps recognizing their error, the Medical Board agreed to

18  negotiate with Dr. Wells for a deadline to re-take the exam.

19    On April 1, 2019, Dr. Wells asked if he could have until October 2019 to re-take Step 3 so

20  that he could have time to study while continuing to work. On April 15, 2019, Dr. Wells informed

21  the Medical Board of his ADHD diagnosis, and that he would need to obtain testing

22  accommodations. Initially, the Medical Board denied Dr. Wells' request to re-take Step 3 in

23  October, but after further communications, the Medical Board agreed to await the results of

24  NBME's Disability Services' decision on Dr. Wells' request for testing accommodations.

25    On April 25, 2019, Dr. Wells applied to NBME the first time seeking testing

26  accommodations for Step 3. Dr. Wells submitted a personal statement, testing scores, and a

27  medical evaluation from Gerald Baltz recommending accommodations based on Dr. Wells'

28  ADHD diagnosis.

153331931.1

On May 2, 2019, Dr. Mary S. Kelly, Director of Academic Support and Counseling at Albert Einstein College of Medicine submitted documentation verifying the prior testing accommodations Dr. Wells had received while in medical school. On May 10, 2019, Dr. Wells was notified by Jennifer Cohen, secretary at NBME's Disability Services, that his case was under review.

From May 2019 – September 2019, Dr. Wells diligently kept Christine Thomas, a licensing manager with the Medical Board at that time, informed by email about his efforts to obtain disability accommodations as well as the fact that he was required to wait a period of time before he could re-take Step 3. Dr. Wells notified the Medical Board that he would re-take Step 3 of the USMLE on October 22, 2019, thinking he would obtain disability accommodations.

On July 9, 2019, NBME Disability Assessment Analyst, Dr. Lucia McGeehan, denied my request for accommodation, stating I lacked clinical evidence of pervasive pattern of social/occupational impairment crossing several domains.  Dr. Wells sent an appeal letter by e-mail requesting second review. On July 20, 2019, Dr. Wells also submitted new personal statement and additional letter of support from Dr. Baltz detailing pervasive pattern of disability impairment throughout Dr. Wells' life in a variety of areas.

On August 19, 2019, Dr. Wells' appeal was denied by a second reviewer, Dr. Catherine Farmer, Director of NBME Disability Services and ADA compliance officer for testing programs. Dr. Farmer's reasons was that the evidence Dr. Wells had submitted was insufficient to warrant the need for accommodations, but she did not specify or recommend any additional documentation that Dr. Wells should submit.

On August 21, 2019, Dr. Balz attempted to intercede and advocate for Dr. Wells' request for disability accommodations. NBME refused to communicate with Dr. Balz and provided no specific information about what more Dr. Wells could or should do to obtain accommodations.

153331931.1

Instead, NBME referred Dr. Balz to the USMLE website for ADHD accommodations - https://www.usmle.org/test-accommodations/guidelines.html#guidelines-adh d.[1]

Not knowing what else to do to preserve his career, Dr. Wells attempted Step 3 of the USMLE on October 22-23, 2019 without the requested accommodations. He failed the examination. On November 25, 2019, Dr. Wells was notified by the Medical Board that he needed to place his license on inactive status due to failing Step 3 a third time. Dr. Wells was further advised that he had one attempt remaining to take and pass Step 3 within one calendar year. Dr. Wells was advised that if he was not successful within that time frame, his license would be permanently revoked in California.

On December 24, 2019, Dr. Wells submitted an application to the Medical Board to inactivate his medical license. As a result, he was no longer eligible for employment as a psychiatrist. Dr. Wells was granted emergency medical leave from his employment, and his employment was terminated thereafter in April 2020. Dr. Wells has not been employed in the medical field since that time. To mitigate his losses, Dr. Wells took a part-time job selling insurance, but this job comes nowhere close to compensating Dr. Wells as his employment as a psychiatrist once did.

On June 29-30, 2020, Dr. Wells attempted to take Step 3 again without accommodations. He failed a fourth time. After this fourth attempt, Dr. Wells obtained second, thorough neurological evaluation from Dr. Annette Swain, Ph.D, a board certified clinical and

---

[1] Plaintiff's counsel last accessed this link on August 5, 2021 to confirm it still works. Interestingly, this link contains a further link to a settlement agreement entered into by NBME as a result of a disability discrimination complaint filed by the U.S. Dept. of Justice in another matter. This sub-link has worked on prior occasions when Plaintiff's counsel has attempted to follow it. On August 5, 2021, however, the link did not work and returned the following message: "The page cannot be displayed because an internal server error has occurred." However, to the best of Plaintiff's counsel's recollection, this sub-link originally linked to a DOJ Settlement Agreement that required NBME to be transparent with those applying for disability accommodations, and if an application is denied, to inform the applicant why and what additional materials were needed to evaluate the application. It is Plaintiff's position that the Settlement Agreement applies here and was not followed in Dr. Wells' case.

neuropsychologist, and a recognized expert in the field of neuropsychological evaluation. Dr. Swain evaluated Dr. Wells, including meeting with him personally and administering a complete battery of neuropsychological tests. Dr. Swain concluded that, while Dr. Wells did, in fact, have ADHD, which limited his abilities relative to non-disabled persons, Dr. Wells also had organic, neurocognitive deficits related to being born premature and of low birth weight, which she concluded negatively affected Dr. Wells in numerous ways, including in the area of reading, writing, concentration, and executive functioning.

Based on Dr. Swain's evaluation, Dr. Wells applied again to NBME seeking accommodations to re-take Step 3 of the USMLE. Although by this point, Dr. Wells was beyond the number of attempt allotted by the Medical Board, other states have different numbers of attempts, and Dr. Wells thought he might be able to salvage his career by licensure in another state.

Despite the thorough evaluation conducted by Dr. Swain, Dr. Wells application for disability accommodations was denied yet again by Dr. Catherine Farmer of NBME. This time, however, Dr. Farmer took the position that Dr. Wells was not a disabled person within the meaning of the ADA and, thus, not entitled to accommodations. She further stated that this conclusion was reached after an individualized assessment was made, even though no one from NBME ever spoke with Dr. Wells, much less interviewed him or evaluated him. NBME denied Dr. Wells' second request for disability accommodations on or about March 26, 2021.

Dr. Wells sat for Step 3 of the USMLE a fifth time on June 2021. Although he did not perform any better on this fifth attempt than he did on his prior attempts, Dr. Wells learned that he had received a passing score by one point on the exam on or about July 20, 2021. This one point places him well within the margin of error for the Step 3 exam.

153331931.1

Since passing Step 3, Dr. Wells has attempted to regain licensure in California as well as other states. These efforts have not been successful due to the fact Dr. Wells must disclose the number of attempts he made to pass the USMLE, and the length of time it has taken for him to pass the exam. This has resulted in his inability to obtain licensure.

While the Complaint, as it is currently pleaded, must be amended to reflect the current state of facts for this case, Dr. Wells' underlying claim for disability discrimination remains no less viable just because he passed Step 3. Dr. Wells' situation is no different than that of a disabled person who, with tremendous effort and difficulty, and after considerable and embarrassing struggle with the handle of a ADA non-compliant door, is finally able to open the door. Dr. Wells is a disabled person who was entitled to disability accommodations when he first applied for them with NBME. But for those accommodations being wrongfully denied, Dr. Wells contends he would not have had to take Step 3 five times over such a prolonged period of time, which has detrimentally affected his career path, if not foreclosed it altogether.

Defendants' Statement of Relevant Facts:

The National Board of Medical Examiners ("NBME") is a private, not-for-profit organization whose mission is to protect the health of the public through the development and administration of high-quality assessments of the knowledge and skills of health professionals.

The Federation of State Medical Boards ("FSMB") is a private, not-for-profit organization whose members consist of state medical and osteopathic regulatory boards (commonly referred to as state medical boards) within the United States and its territories.  FSMB supports its member boards as they fulfill their mandate of protecting the public's health, safety, and welfare through the proper licensing, disciplining, and regulation of physicians.

1   NBME and FSMB jointly own the United States Medical Licensing Examination

2   ("USMLE") program.  The USMLE is a standardized examination used to evaluate applicants'

3   competence for medical licensure.  It is designed to assess an examinee's ability to apply the

4   knowledge and demonstrate the fundamental skills that constitute the basis of safe and effective

5   patient care.  Licensing authorities across the U.S. rely upon the USMLE in evaluating the

6   qualifications of individuals seeking an initial license to practice medicine.

7   Three "Step" exams make up the USMLE, taken at different times in the graduate medical

8   education process:  Step 1, Step 2 Clinical Knowledge ("Step 2 CK"), and Step 3.  Step 1 assesses

9   whether candidates can apply basic science concepts that are important to the practice of

10  medicine.  Step 2 CK assesses an examinee's ability to apply medical knowledge, skills, and

11  understanding of clinical science essential for the provision of patient care under supervision.

12  And Step 3 assesses whether candidates can apply medical knowledge and understanding of

13  biomedical and clinical science essential for the unsupervised practice of medicine.  Step 3 is the

14  final examination in the USMLE sequence and, if passed, generally leads to a state license to

15  practice medicine without supervision.

16  Examinees take the USMLE under the same standard conditions.  NBME provides

17  accommodations, however, to individuals who document that they have a disability within the

18  meaning of the ADA and that such accommodations are necessary to afford them access to the

19  exam.  In all instances, NBME's objective is to ensure that "individuals with *bona fide* disabilities

20  receive accommodations, and that those without disabilities do not receive accommodations that

21  they are not entitled to, and which could provide them with an unfair advantage…. As

22  administrator of the national exam used by … states for licensing medical doctors, [NBME] has a

23  duty to ensure that its examination is fairly administered to all those taking it."  *Powell v. Nat'l*

24  *Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004).  NBME also has a duty to protect the

25  integrity of USMLE scores, given the USMLE's role in helping jurisdictions ensure the minimum

26  competency of licensed physicians.

27

28

Plaintiff Cornell Wells ("Dr. Wells") took, and passed, Step 1, Step 2 CK, and Step 2 CS (a clinical skills component of the USMLE that was suspended in May 2020 due to the COVID-19 pandemic and subsequently discontinued) of the USMLE under standard testing conditions.

Dr. Wells took Step 3 of the USMLE two times in 2014 — in April and June — and did not obtain a passing score on either attempt.  Nevertheless, the Medical Board of California ("Medical Board") issued Dr. Wells a license to practice medicine on or about July 8, 2014.  On information and belief, Dr. Wells did not notify the Medical Board that he had failed to pass the test or otherwise inquire as to why he received a license despite his failure to pass the test.  It is the Defendants' understanding that Dr. Wells practiced medicine pursuant to that license.

According to Dr. Wells, the California Medical Board "discovered in or about March 2019 as a result of a routine audit, that Plaintiff's medical license had been issued to him in error on July 8, 2014."  Complaint ¶ 19.

In April 2019, Dr. Wells submitted documentation to NBME as part of a request for testing accommodations on Step 3 of the USMLE.  His request was complete on May 13, 2019.  Dr. Wells sought accommodations based on a diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD).  NBME thoroughly reviewed all the documentation.  It also sought the recommendation of an outside expert.

Based on NBME's review and the recommendation of its external expert, NBME denied his request for accommodations by letter dated July 9, 2019.  As explained, in part, in NBME's decision letter:

> ADHD is a neurodevelopmental disorder that begins in childhood.  Even if not formally diagnosed in childhood, the essential feature of ADHD is a persistent patterns of inattention and/or hyperactivity-impulsivity that interferes with functioning or development.  ADHD usually results in a long history of chronic impairment and the diagnosis affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school.  According to the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*, manifestation of the disorder must be present in more than one setting (e.g., home and school, work).  It needs to be documented beyond self-report that symptoms have consistently and pervasively disrupted functioning over time in multiple behavioral domains.  Your documentation does not reflect a record of chronic and pervasive problems managing daily demands for attention, concentration, or organization that has substantially impacted your functioning in school, work, social, or other domains.

As best one can tell, you progressed throughout your education with an academic record and scores on timed standardized tests sufficient to gain admission to and graduate from college, earn a master's degree, and matriculate and complete at least two years of medical school, all without formal accommodations. Regarding your performance on standardized tests, our records show that you successfully completed USMLE Step 1, Step 2 CK, and Step 3 CS under standard testing conditions. Taken altogether, the documentation provided does not demonstrate impaired functioning relative to most people or that standard test timing is a barrier to your access to Step 3.

Dr. Wells sought reconsideration of his testing accommodation request, and his request was denied by letter dated August 19, 2019.

Dr. Wells took the USMLE Step 3 examination in October 2019 under standard conditions, and he did not pass the test.

On information and belief, Dr. Wells placed his California medical license on inactive status on or around December 14, 2019.

Dr. Wells took the USMLE Step 3 examination again in June 2020 under standard conditions, and he did not pass the test. He did not request accommodations on this administration.

Dr. Wells submitted another request for testing accommodations on the Step 3 exam to NBME on or around January 20, 2021. NBME once again thoroughly reviewed his request. In addition, NBME sought the recommendation of a different external expert. Based on NBME's review and the recommendation of its external expert, NBME denied Dr. Wells's request by letter dated March 26, 2021.

Dr. Wells took the USMLE Step 3 examination again in June 2021 under standard conditions, and he passed the test.

The principal factual issues in dispute between the parties are whether Dr. Wells was properly diagnosed with any mental impairment; if so, whether that impairment substantially limited Dr. Wells' ability to perform any major life activities that are relevant to test taking, as compared to most people in the general population; and, if so, whether Dr. Wells required the testing accommodations he requested in order to take the USMLE Step 3 examination in an accessible manner.

153331931.1

**3.      LEGAL ISSUES**

Plaintiff's Statement of Legal Issues:

(1) Whether Dr. Wells has a cognizable claim for disability discrimination within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12012, *et seq.*

(2) Whether NBME's actions in denying Dr. Wells request for accommodations violated the California Unruh Civil Rights Act ("Unruh"), Cal. Civ. Code § 51.

(3) Whether Dr. Wells is entitled to injunctive relief pursuant to the ADA and/or monetary damages under Unruh.

Defendants' Statement of Legal Issues:

(1)  Whether Plaintiffs' claims are moot, in whole or in part, now that he has passed Step 3 of the USMLE examination.

(2)  Whether Plaintiff is disabled within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

(3)  Whether Plaintiff was entitled to any of his requested testing accommodations under the ADA, 42 U.S.C. § 12189.

(4)  Whether NBME's actions in denying Plaintiff's requests for testing accommodations constitute a violation of the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51.

(5)  Whether Plaintiff is entitled to monetary damages pursuant to the Unruh Act.

(6)  Whether Plaintiff's claims are barred in whole or in part by the statute of limitations.

(7)  Whether Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

(8)  Whether Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

(9)  Whether Plaintiff's request for compensatory damages is barred or limited by his failure to mitigate damages.

(10) Whether certain of the damages requested by Plaintiff are too speculative to be awarded, even if he were to prevail.

153331931.1

**4.     MOTIONS**

| 2/23/2021 | Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Dkt. 5) | Granted 2/24/21 (Dkt. 10) |
|---|---|---|
| 4/9/2021 | NBME's Motion for Leave to Appear Pro Hac Vice (Robert Burgoyne) (Dkt. 22) | Granted 4/13/21 (Dkt. 23) |
| 5/4/21 | FSMB's Motion for Leave to Appear Pro Hac Vice (Robert Burgoyne) (Dkt. 30) | Granted 5/5/21 (Dkt. 31) |

<u>Plaintiff's Position</u>

Plaintiff intends to file a motion for leave to amend the Complaint to explain in detail the basis for Plaintiff's continued claims under the ADA and Unruh. Plaintiff also intends to move for injunctive relief under the ADA. Plaintiff will also file appropriate pre-trial motions in limine.

<u>Defendants' Position</u>

If not voluntarily dismissed by Plaintiff, Defendants may move to dismiss Plaintiff's ADA claim and requests for injunctive relief for lack of subject matter jurisdiction, on the grounds of mootness.

**5.     AMENDMENT OF PLEADINGS**

<u>Plaintiff/Defendants' Agreed Position</u>

The parties propose a deadline of October 1, 2021, for seeking leave to file amended pleadings, but do not preclude themselves from also seeking leave to amend later pursuant to Rule 15 of the Federal Rules of Civil Procedures.

**6.     EVIDENCE PRESERVATION**

<u>Plaintiff's Position</u>

Plaintiff's counsel has reviewed the *Guidelines Relating to the Discovery of Electronically Stored Information* ("ESI Guidelines") and discussed them with Dr. Wells. Due to both counsels' schedules as well as Plaintiff's counsel sustaining a back injury that caused the temporary need for some time off work, counsel was unable to conduct a meet and confer until July 29, 2021. At

-13-

that time, the ESI Guidelines were not discussed in any meaningful way, nor have they been fully discussed since that time.

Prior to this time, counsel met and conferred via email, but counsel's communications were focused on the applicability of the Court's *General Order 56 Americans with Disability Act Litigation* ("Gen Order 56 ADA") to a Title III ADA case that does not involve accessibility to a physical space. Plaintiff's counsel took the position that Gen Order 56 ADA does apply to this case to a limited extent, but counsel for Defendants took the position Gen Order 56 ADA did not apply. This dispute was not resolved prior to the Court setting this Case Management Conference.

Counsel will exercise all best efforts to conduct a thorough Fed. R. Civ. P. Rule 26(f) conference in advance of August 12, 2021 pursuant to the Court's Rule 26(f) Checklist. At this time, it is unknown to Plaintiff what steps Defendants have taken to preserve potentially relevant electronically stored information.

Defendants' Position

Undersigned counsel has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) on at least a preliminary basis regarding the need for steps to preserve evidence relevant to the issues reasonably evident in this action.

Defendants have put litigation holds in place with respect to relevant files and communications regarding Plaintiff.

Defendants agree that their obligation to preserve information is ongoing and they agree to issue litigation hold notices, as necessary, throughout the course of this action.

-14-

**7. DISCLOSURES**

Plaintiff/Defendants' Agreed Position

NBME served its initial disclosures on May 3, 3021.  FSMB served its initial disclosures on May 5, 2021.  Plaintiff served his initial disclosures on May 26, 2021.

**8. DISCOVERY**

Plaintiff's Position:

Protective Order: Plaintiff intends to conduct discovery into specific matters related to Step 3 of the USMLE, absent a stipulation with defense counsel. It is anticipated that the defense will, at a minimum, want a protective order for this information.

Initial Disclosures: The parties have exchanged initial disclosures.

Subjects of Discovery: The parties agree that discovery will pertain to the claims and defenses alleged by any of the parties.  The parties reserve all rights conferred by the Federal Rules or this Court to object to any particular discovery request.

Plaintiff expects that discovery will include, but not be limited to, all communications and correspondence, including emails, voicemail, or other electronic communications, that discuss, describe, evidence, or pertain to Dr. Wells' applications for disability accommodations on Step 3 of the USMLE; documentation (both written and electronic) submitted by Dr. Wells in support of his applications for disability accommodations; documentation (both written and electronic) regarding Defendants' denial of disability accommodations for Dr. Wells as well as the methodology or rationale for how Defendants reached the denial decision; Dr. Wells' score reports, testing records; and USMLE Step 3 testing program documents stating testing protocols as well as policies and procedures for taking, re-taking, and passing Step 3.

Electronic Discovery: Plaintiff believes an electronic discovery order will be necessary in this case. Plaintiffs agrees that most documents may be produced as

-15-

153331931.1

searchable PDFs. Exceptions to this would include spreadsheets, database records or information, and emails, which should be produced in native or near-native format.

Privilege Claims: No order is sought at this time.

Timing of Discovery: No discovery has been conducted. Discovery should commence immediately. There is not sound reason to delay discovery for another two months. Moreover, Plaintiff's counsel anticipates (based on instructions from his medical doctor) undergoing surgery to repair a hiatal hernia in October 2021 and desires to conduct discovery in this matter prior to this surgery, which has a complicated, 6-week recovery period. Delaying discovery to October 2021 would be unduly prejudicial to Dr. Wells.

Discovery Limits:  Plaintiff proposes a more expedited discovery schedule than Defendants.

Service:  The parties agree to serve all discovery requests and responses by electronic mail, and all parties agree to this method of service.  For purposes of computing time, service of discovery requests by email shall be treated as if service was made by U.S. mail pursuant to Fed. R. Civ. P. 5(b)(2)(C).

Defendants' Position:

Protective Order:  Without knowing what discovery Plaintiff anticipates taking, Defendants do not know whether they will need a protective order in the case.  If Defendants conclude such an Order is needed, they will coordinate with Plaintiff's counsel and seek an Order from the Court.

Initial Disclosures:  The parties have exchanged initial disclosures.

Subjects of discovery:  The parties agree that discovery will pertain to the claims and defenses alleged by any of the parties.  The parties reserve all rights conferred by the Federal

-16-

1   Rules or this Court to object to any particular discovery request.

2         Defendants expect that discovery would include the following primary topics:

3   Plaintiff's claimed impairment; plaintiff's clinical evaluations, diagnoses, and treatment;

4   plaintiff's educational and employment histories; plaintiff's history of taking other standardized

5   examinations; plaintiff's requests for testing accommodations; NBME's response to plaintiff's

6   requests for testing accommodations; plaintiff's status, interactions, and communications with the

7   California Medical Board; plaintiff's actions following notification of licensure by the California

8   Medical Board; the bases for plaintiff's request for damages.

9         The parties expect that fact discovery would take 5 months, followed by expert reports

10  and expert discovery.  They do not think that discovery should be conducted in phases or be

11  limited to or focused on particular issues.

12        Electronically Stored Information:  Defendants do not believe that an ESI order will be

13  necessary in this case, or that electronically stored information needs to be produced in native

14  format, with metadata, or with load files.  Documents maintained electronically may be produced

15  in paper or .pdf format.  Imposing additional requirements would unnecessarily increase

16  discovery costs, with no benefit to anyone, and therefore would not be consistent with the

17  proportionality requirements of Rule 26 or the goals stated in Rule 1 .

18        Privilege Claims:  The parties do not seek an order regarding privilege claims at this time.

19        Timing of Discovery:  Discovery may commence on October 1, 2021.  Defendants

20  propose that fact discovery be completed by February 28, 2022.  This would enable Plaintiff to

21  have the surgery he references above without having to participate in discovery during the period

22  in which he recuperates.

23        Discovery Limits:  The parties do not seek any changes to the limitations on discovery

24  imposed under the Federal Rules or the Local Rules, and do not seek any other limits on

25  discovery at this time.  The parties' proposed discovery schedule is shown in Section 17 below.

26        Service:  The parties agree to serve all discovery requests and responses by electronic

27  mail, and all parties agree to this method of service.  For purposes of computing time, service of

28  discovery requests by email shall be treated as if service was made by U.S. mail pursuant to Fed.

153331931.1

R. Civ. P. 5(b)(2)(C).

    <u>Additional Discovery Matter</u>:   To facilitate discovery from third-parties who have documents or other information regarding Plaintiff that is relevant to this case -- such as medical professionals, his former employer(s), the Medical Board of California, and educational institutions that he attended -- Defendants request that Plaintiff be required to promptly provide an executed release to the Defendants that authorizes such third parties to provide information to Defendants that is relevant to this lawsuit.

**9.    CLASS ACTIONS**

    <u>Plaintiff's/Defendants' Agreed Position</u>:

    This matter is not proceeding as a class action.

**10.    RELATED CASES**

    <u>Plaintiff's/Defendants' Agreed Position</u>:

    There are no related cases.

**11.    RELIEF**

    <u>Plaintiff's/Defendants' Agreed Position</u>:

    Under his current complaint, Plaintiff seeks the following relief:

    Declaratory relief regarding his request for accommodations on Step 3 of the USMLE.

    Preliminary or permanent injunctive relief requiring defendants to provide him with his requested accommodations on Step 3 of the USMLE.

    Preliminary or permanent injunctive relief requiring defendants to expunge from Plaintiff's record Plaintiff's attempts to take Step 3 without accommodations in October 2019, June 2020, and July 1, 2021, to enable Plaintiff to retake the Step 3 examination after July 1, 2021.

    Compensatory damages under Cal. Civ. Code § 52.

    Statutory penalties under Cal. Civ. Code § 52.

    Attorneys' fees and costs and interest.

    <u>Defendants' Position</u>:

    Defendants deny that Plaintiff is entitled to any relief or the specific relief sought, and

153331931.1

further note that Plaintiffs' requests for declaratory and injunctive relief are moot now that he has passed the Step 3 examination under standard testing conditions.

Defendants do not believe that any damages are warranted in this case. However, in the event Plaintiff were to prevail on his Unruh Act claim, Defendants believe that the most he would appropriately be awarded would be $4,000, which is the statutory minimum damage amount that he could recover for the Unruh Act violation that he has alleged.

**12.    SETTLEMENT AND ADR**

Plaintiff's Position:

Only the most preliminary settlement discussions have occurred. Plaintiff requests a referral to a Magistrate Settlement Conference.

Defendants' Position:

The parties have engaged in, and are continuing to engage in, settlement discussions. Defendants do not believe that settlement negotiations or mediation before a United States Magistrate Judge or private mediator, or any other formal ADR process, would be helpful at this time. The parties do not believe that discovery or motions are necessary to position the parties to negotiate a resolution at this time.

**13.    CONSENT TO MAGISTRATE FOR ALL PURPOSES**

Plaintiff's/Defendants' Agreed Position:

The parties have already consented to a magistrate judge conducting all further proceedings.

**14.    OTHER REFERENCES**

None.

**15.    NARROWING ISSUES**

Plaintiff's Position:

Plaintiff will seek leave to amend the Complaint, in the absence of a stipulation by defense counsel, to set forth his amended claims under the ADA and Unruh Act.

Defendants' Position:

As discussed above, it is Defendants' position that a substantial part of Plaintiff's claims

-19-

and requests for relief are moot given that he has now passed the Step 3 examination.  If Plaintiff does not voluntarily amend his complaint to remove his ADA claim, Defendants' may move to dismiss on the grounds of lack of subject matter jurisdiction.

**16.     EXPEDITED TRIAL PROCEDURE**

Plaintiff's/Defendants' Agreed Position:

The parties do not believe this case can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

153331931.1

**17.** **SCHEDULING**

Plaintiff's Position:

Deadline to amend pleadings: October 1, 2021

Close of fact discovery: December 31, 2021

Expert disclosure/reports due: December 1, 2021

Expert rebuttal/reports due: January 3, 2022

Expert discovery cut off: January 31, 2022

Last day to file motions for summary judgment: March 31, 2022

Last day to oppose summary judgment motions: April 15, 2022

Last day to submit summary judgment reply: May 2, 2022

Pre-trial conference: July 15, 2022

Trial: August 1, 2022

Defendants' Position:

Defendants propose the following dates:

Fact discovery opens:  October 1, 2021

Close of fact discovery:  February 28, 2022

Expert disclosures/reports:  March 31, 2022

Rebuttal expert disclosures/reports:  April 30, 2022

Motions for summary judgment (if any):  May 27, 2022

Summary judgment opposition:  June 17, 2022

Summary judgment reply:  July 1, 2022

Pretrial conference:  September 15, 2022

Trial:  October 3, 2022

**18.** **TRIAL**

Plaintiff's Position:

Plaintiff has demanded a jury trial and estimates the trial would take 3 full days.

Defendants' Position:

Plaintiff has demanded a jury trial.  Defendants anticipate trial would take 2-3 full days.

153331931.1

1  **19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2      Defendants have filed the "Certification of Interested Entities or Persons" required by

3  Civil Local Rule 3-15 (Dkt. 19, 28).

4      The parties have no such interest to report.

5  **20.    PROFESSIONAL CONDUCT**

6      All attorneys of record for the parties have reviewed the Guidelines for Professional

7  Conduct for the Northern District of California.

8

9  DATED:  August 6, 2021                    **PERKINS COIE LLP**

10

11                                  By   /s/ Robert A. Burgoyne
                                        Torryn Taylor Rodgers
                                        Robert A. Burgoyne

12

13                                  Attorneys for Defendants
                                    NATIONAL BOARD OF MEDICAL
14                                  EXAMINERS, and FEDERATION OF
                                    STATE MEDICAL BOARDS, INC.

15  DATED:  August 6, 2021                    **YOUNG LAW GROUP**

16

17                                  By   /s/ Eric G. Young*
                                        Eric G. Young

18

19                                  Attorneys for Plaintiff
                                    CORNELL WELLS, JR.

20

21

22  * I, Eric G. Young, hereby attest that I gained the concurrence of all signatories whose signatures
   are represented by /s/ in the filing of this document. I sincerely apologize to the Court that this
23  filing is one day late. I take full responsibility for the lateness and ask for the Court's
   understanding.
24      I have taken over the litigation practice of a colleague who has late stage cancer. This
   move, effectively, doubled my case load almost overnight, and it has been challenging for a solo
25  practitioner such as myself to keep up with the pace. I am taking steps to address this issue such
   as hiring additional paralegal staff and associates, but that, in itself, is time-consuming and
26  difficult to manage alongside my litigation case load. I will submit a further declaration to the
   Court.
27      Respectfully submitted.

28

1

**CERTIFICATE OF SERVICE**

***Wells Jr. v. National Board of Medical Examiners, et al.***

**USDC-ND, Oakland Division, Case No. 3:21-cv-01279-JSC**

At the time of service, I was over 18 years of age and not a party to this action. My business address is 411 Russell Avenue, Santa Rosa, CA 95403.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 6, 2021 , I served the following identified document(s):

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

I served the document(s) on all interested parties as follows:

<u>Name of Party/Counsel Served</u>:                        <u>Attorney For</u>:

| | |
|---|---|
| Torryn Taylor Rodgers<br>Robert Burgoyne<br>Perkins Coie LLP<br>505 Howard Street, Ste. 1000<br>San Francisco, CA 94105<br>Tel: 415-344-7000<br>TRodgers@perkinscoie.com<br>RBourgoyne@perkinscoie.com<br>CMew@perkinscoie.com | Attorneys for National Board of Medical Examiners, and Federation of State Medical Boards, Inc. |

I served the above-named documents as follows:

_____**BY FACSIMILE TRANSMISSION** - pursuant to agreement of the parties, from fax number (707) 289-8059 to the fax number(s) set forth above. The facsimile machine I used complied with Rule 2.301(3) and no error was reported by the machine. Pursuant to Rule 2.306(h)(4), I caused the machine to print a transmission record, a copy of which is attached.

_____**BY MAIL** -

_____By personally depositing the documents in a sealed envelope addressed as set forth above with the U.S. Postal Service, postage fully prepaid, sent by regular mail and certified mail, return receipt requested

X        By placing documents enclosed in a sealed envelope addressed as set forth above for collection and mailing. I am readily familiar with my firm's practice of collection and processing correspondence for mailing. In the ordinary course of my firm's business, correspondence is deposited with U.S. postal service on the same day it is placed for collection, postage fully prepaid.

_____**BY PERSONAL SERVICE** - by delivering a copy of the document(s) by hand to the addressee.

*Young Law Group*
411 Russell Avenue, Second Floor, Santa Rosa, CA 95403
Tel: (707) 527-3637/Facsimile: (707) 289-8059

_____**BY EXPRESS SERVICE** - by depositing in a box or other facility regularly maintained by the express service carrier or delivering to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served.

__X_____**BY ELECTRONIC TRANSMISSION** - pursuant to agreement of the parties, or by Court order, transmitting a PDF version of the document(s) by electronic mail to the party(ies) identified above using the e-mail address(es) indicated.

_____**BY ELECTRONIC TRANSMISSION ONLY DURING CORONAVIRUS/COVID-19 PANDEMIC** – The document(s) were emailed to the persons at email addresses listed based on notice previously provided that, during the Coronavirus (COVID-19) pandemic, this office will be primarily working remotely, unable to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

_____I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__X____I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: August 6, 2021                              **YOUNG LAW OFFICE**

/S/Eric G. Young
Eric G. Young

CERITIFICATE OF SERVICE