# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CORNELL WELLS, JR.,**<br><br>　　Plaintiff,<br><br>v.<br><br>**NATIONAL BOARD OF MEDICAL EXAMINERS; FEDERATION OF STATE MEDICAL BOARDS,**<br><br>　　Defendants. | CIVIL CASE NO. 3:21-cv-01279-JSC<br><br>PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR TRIAL BY JURY<br><br>Date: November 18, 2021<br><br>Time: 9:00 a.m.<br><br>Location: Videoconference |

**TO ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE** that on November 18, 2021 at 9:00 a.m., via videoconference, Plaintiff CORNELL WELLS, JR. ("Plaintiff") will move the Court pursuant to Rule 15 of the Federal Rules of Civil Procedure for leave to file the attached First Amended Complaint for Damages; Declaratory and Injunctive Relief; and Demand for Trial by Jury (*See,* Young Declaration, ***Exhibit "1,"*** "First Amended Complaint," submitted herewith).

Plaintiff seeks to achieve three goals with this motion. First, Plaintiff seeks leave plead this matter as a class action on behalf of himself and the following class members:

> All persons who are disabled within the meaning of Title III of the Americans With Disabilities Act (42 U.S.C. § 12181), As Amended ("ADAAA"), and California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51, 52) ("Unruh") who have applied to sit for or take any of the "Steps" of the United States Medical Licensing Exam ("USMLE") in the State of California, who requested accommodations for their disabilities from Defendants, and who had their requests for accommodations denied by Defendants, regardless whether such individuals thereafter attempted to sit for or take any Step of the USMLE without accommodations.

Second, Plaintiff seeks leave to amend to enhance the allegations on behalf of himself and the above-described class pertaining to Defendants' violation of California's Unruh Civil Rights Act. Cal. Civ. Code § 51, 52 ("Unruh").

Finally, Plaintiff seeks leave to amend the factual allegations, which have changed significantly since the original Complaint was filed.

For all these reasons, and those arguments set forth in the attached Memorandum in Support of Motion, Plaintiff respectfully requests this Court grant Plaintiff leave to file the First Amended Complaint. Also attached is a Proposed Order.

Respectfully submitted,

Dated: October 1, 2021                     **YOUNG LAW GROUP**

By: /s/ *Eric G. Young, Esq.*
Eric G. Young, Esq. (SBN 190104)
411 Russell Ave., 2nd Floor
Santa Rosa, CA 95403
Tel.: 707.527.3637
Fax: 707.520.7272
Email: eyoung@younglawca.com

Attorneys for Plaintiff
CORNELL WELLS, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CORNELL WELL, JR.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**NATIONAL BOARD OF MEDICAL EXAMINERS; FEDERATION OF STATE MEDICAL BOARDS,**<br><br>    **Defendants.** | **CIVIL CASE NO. 3:21-cv-01279-JSC** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Pursuant to Rule 15, Plaintiff CORNELL WELLS, JR. ("Plaintiff") hereby moves the Court for leave to file the attached First Amended Complaint for Damages; Declaratory and Injunctive Relief; and Demand for Trial by Jury (*See,* Young Declaration, **Exhibit "1,"** "First Amended Complaint").

I.   **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff, a 45-year-old African American man, filed his original Complaint on February 23, 2021, alleging violations of Title III of the ADA/ADAA, 42 U.S.C. § 12181, et seq. ("Title III" or "the ADAAA") and California's Unruh Civil Rights Act, Civil Code §§ 51, 52 ("Unruh"), stemming from two denials of disability accommodations requested by Plaintiff from Defendants to sit for the United States Medical Licensing Exam ("USMLE"). Defendants jointly administer the USMLE and determine whether disability accommodations will be granted to any applicant for the exam.

The USMLE is given in stages, or "Steps." Plaintiff sought disability accommodations for "Step 3," the final step of the exam, after the California Medical Board discovered during a "routine audit" conducted sometime in March 2019 that it had issued a medical license to Plaintiff in error. Prior to this time, Plaintiff had been a practicing psychiatrist since 2016 without any reproach against his license, and he was board certified in 2018. As a result, Plaintiff was informed in March 2019 that he had to re-take Step 3 of the USMLE.

Until July 1, 2021, an applicant was allowed six attempts to pass "Step 3" of the USMLE. On July 1, 2021, Defendant FEDERATION OF STATE MEDICAL BOARDS ("FSMB") instituted a new policy where applicants may only attempt "Step 3" four times in total. When Plaintiff was advised by the Medical Board in March 2019 that he actually had not passed "Step 3," Plaintiff had already attempted "Step 3" on two, prior occasions: April 15, 2014 and June 1, 2014. Plaintiff and the Medical Board agreed Plaintiff could re-take "Step 3" on October 23, 2019.

On April 25, 2019, well in advance of the October test date, Plaintiff submitted documentation to Defendant NATIONAL BOARD OF MEDICAL EXAMINERS ("NBME") requesting disability accommodations. Plaintiff included, among other things, a personal statement and testing scores.

On May 2, 2019, Dr. Mary S. Kelly, clinical psychologist, and Director of Academic Support and Counseling at Albert Einstein School of Medicine, Plaintiff's medical school, submitted documentation demonstrating Plaintiff had received disability accommodations for test taking while in medical school. On May 10, 2019, Plaintiff was informed that his request was under review by Jennifer Cohen, secretary at NBME's Disability Services department.

Over 60 days later, on July 9, 2019, Dr. Lucia McGeehan, Ph.D. and NBME's Disability Assessment Analyst, denied Plaintiff's request for accommodations, stating:

> *"Your documentation does not reflect a record of chronic and pervasive problems managing daily demands for attention, concentration, or organization that has substantially impacted your functioning in school, work, social, or other domains."*

This statement, on its face, applied an incorrect standard to whether Plaintiff should have been granted disability accommodations under either the ADAAA or Unruh.

Plaintiff filed a timely appeal of the denial. On July 20, 2019, Plaintiff submitted a new personal statement to NBME and a letter of diagnosis from Dr. Gerald Baltz, a certified psychiatric nurse practitioner with over 10 years of experience. Dr. Baltz's letter demonstrated a pervasive pattern of disability impairment throughout Plaintiff's life across multiple domains of living. Dr. Baltz's based this diagnosis on his expertise as well as the fact he had been treating Plaintiff for ADHD.

In reaching his conclusions, Dr. Baltz reviewed Plaintiff's full medical history as well as the psychometric testing conducted by Dr. Kelly when Plaintiff was in medical school. Dr. Baltz wrote to NBME:

> *"I can definitively state that Dr. Wells carries a diagnosis of ADHD, primarily inattentive presentation, and has carried this diagnosis since childhood."*

On August 19, 2019, Catherine Farmer, Psy.D. and Director of Disability Services for NBME, wrote to Plaintiff denying his request for disability accommodations a second time. This second time, instead of applying a "chronic and pervasive" standard, NBME claimed it undertook "an individualized review of [Plaintiff's] request, but took issue with Dr. Baltz's qualifications, writing:

> *"Supporting documentation submitted from qualified professionals is a necessary part of any request for accommodations and is carefully reviewed by NMBE. Though not required to defer to the conclusions or recommendations of an applicant's supporting professional, we carefully consider the recommendation of qualified professionals made in accordance with generally accepted diagnostic criteria and supported by reasonable documentation."*

Stated plainly, NBME concluded Dr. Baltz was merely a "supporting professional," not a "qualified professional," and NBME is not required to defer to a "supporting professional" simply because he concludes an applicant has a disability warranting accommodations.

At no point during this process, did NBME actually interview Plaintiff, nor was Plaintiff examined or tested by any "qualified professional" affiliated or associated with NBME or FSMB to determine if Plaintiff had ADHD or any other disabilities that might warrant accommodations, despite the supposed "individualized review" NBME claims it conducted. Moreover, in the second denial, NBME did not specify how it was that Plaintiff's documents was not "reasonable." This last point is significant because NBME is already subject to a Settlement Agreement with the United States Department of Justice ("DOJ") in a matter involving USMLE applicant Frederick Romberg (the "Settlement Agreement"). The Settlement Agreement establishes, among other things, the standard that NBME is to employ in reaching a determination about an applicant's request for disability accommodations, that NBME be more transparent about what documentation it needs to see in order to grant disability accommodations, and significantly, that NBME's documentation requirements must be reasonable.

Feeling he had no other alternative, and that he had exhausted his ability to obtain disability accommodations from Defendants, Plaintiff needed to study for "Step 3" of the USMLE with the October 22-23, 2019 test-taking date rapidly approaching. Plaintiff reluctantly decided he would attempt "Step 3" without accommodations. Plaintiff sat for "Step 3" of the USMLE on October 22-23, 2019, his third attempt, and failed again. The Medical Board was notified, and Plaintiff's lost his ability to practice

medicine when he was required to put his license on inactive status by December 24, 2019.

Subsequently and at the cost of several thousands of dollars, on January 20, 2021, Plaintiff submitted a Comprehensive Neuropsychological Evaluation and Report prepared by Dr. Annette Swain, Ph.D. and board certified neuropsychologist who has qualified to testify as an expert witness in numerous courts and jurisdictions on psychological issues and disabilities. Dr. Swain concluded (based on extensive testing and meeting with Plaintiff) that, in addition to ADHD, Plaintiff had a developmental disability that impaired his ability to concentrate as well as executive functioning. Dr. Swain recommended that Plaintiff be accommodated by double testing time and a separate testing room. A Disability Services "Specialist" at NBME acknowledged receipt of Dr. Swain's report.

On March 26, 2021, despite having gone to great lengths and expense to prove his disability, NBME denied Plaintiff's request for accommodations yet again. In her rejection letter, Catherine Farmer, Psy.D. and Director of Disability Services for NBME, again indicated that an "individualized review" had been performed. However, Plaintiff was never interviewed, nor was Dr. Swain. Farmer insinuated that Plaintiff had provided misleading information to NBME about disability accommodations he had received while in medical school. Farmer also seized on certain details to criticize and undermine Dr. Swain's thorough neuropsychological evaluation, which had included a battery of over 21 different tests. Farmer concluded by writing:

> "Accommodations are provided when there is documentation of substantial functional impairment as compared to most people, and a rationale to demonstrate that the requested accommodation is appropriate to the setting and circumstance. Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people in the general population, or that the requested accommodations are an appropriate modification of your USMLE Step 3 test administration."

On June 22, 2021, before the new policy limiting the number of test attempts, Plaintiff again sat for Step 3 of the USMLE without accommodations. The minimum passing score for Step 3 was 198. Plaintiff scored exactly 198, even though he scored the same or lower overall in all categories save one. The score report Plaintiff received bears the following notation:

> "If you tested repeatedly under the same conditions on a different set of items covering the same content, your score would fall within one standard error of the estimate (SEE) of your current score two-thirds of the time. The SEE on this exam is 8 points."

Stated another way, if Plaintiff tested over and over without accommodations on the same Step 3 content, he would likely fail two-thirds of the time. Put bluntly, Plaintiff got lucky on June 22, 2021, but his bare-minimum passing score of 198 does not "accurately reflect [Plaintiff's] aptitude or achievement level." Instead, it reflects his disability impairment, which is forbidden by ADAAA regulations. *See,* 28 C.F.R. § 36.309(b)(1)(i).

Moreover, the mere fact Plaintiff barely passed Step 3 does not render his ADAAA claim moot. In the medical profession, unlike the law, applicants for licensure are required to disclose the number of times they took Step 3 of the USMLE and explain circumstances where it took considerable time to pass Step 3.

In addition, even though Plaintiff was able to sit for the USMLE in June 2021 before FSMB's policy change on test attempts went into effect, Plaintiff had already exceeded the number of attempts allowed by the California Medical Board. California only allows four attempts on the USMLE for licensure. Had Plaintiff been granted accommodations when he first requested them, it is highly likely he would have passed Step 3 in time to recover his California medical license.

## II.  THE FIRST AMENDED COMPLAINT

### A.  Class Allegations – Violation of ADAAA

Through the First Amended Complaint, Plaintiff seeks leave to allege this matter as a class action for the following class members:

> All persons who are disabled within the meaning of Title III of the Americans With Disabilities Act (42 U.S.C. § 12181), As Amended ("ADAAA"), and California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51, 52) ("Unruh") who have applied to sit for or take any of the "Steps" of the United States Medical Licensing Exam ("USMLE") in the State of California, who requested accommodations for their disabilities from Defendants, and who had their requests for accommodations denied by Defendants, regardless whether such individuals thereafter attempted to sit for or take any Step of the USMLE without accommodations.

Based on investigation that has occurred since the filing of the original Complaint, Plaintiff believes Defendants have engaged, and continue to engage, in an organized, systematic, severe and pervasive pattern and practice of denying accommodations not only to Plaintiff, but also to other class members. This pattern and practice of denying disability accommodations to qualified applicants violates Section 12182(a), which bars disability discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, *or accommodations* of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Emphasis added.

In addition, this pattern and practice violates Section 12182(b)(1)(A)(i), which provides that no individual shall, on the basis of disability, be denied the opportunity "to participate in *or benefit from* the goods, services, facilities, privileges, advantages *or accommodations.*" Emphasis added. Likewise, this pattern and practice violates Section 12182(b)(1)(D), which prohibits the use of "standards and criteria or methods of administration…that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control. According to the DOJ, this provision was

included to "incorporate a disparate impact standard" as a means "to end discrimination." *ADA Title III DOJ Interpretive Guidance* on 28 C.F.R. § 36.204. This interpretation is consistent with language adopted by the U.S. Supreme Court in *Alexander v. Choate*, 469 U.S. 287 (1985), interpreting Section 504 of the Rehabilitation Act.

Instead of implementing discriminatory acts, or adopting discriminatory patterns and practices, a place of public accommodations such as Defendants must make "reasonable modifications in policies, practices, or procedures" whenever necessary to provide "goods, services, facilities, privileges, advantages, *or accommodations* to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii), emphasis added. The only exception to this requirement is if the proposed modification of policies, practices, or procedures "would fundamentally alter the nature of such goods, services…or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii)

Defendants' pattern and practices violate the ADAAA and implementing regulations specifically pertaining to licensing examinations. Any examination offered by private entities such as Defendants (who jointly offer and administer the USMLE) that are "related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes" must be offered "in a place *and manner accessible to* persons with disabilities." Section 12189, emphasis added. According to DOJ regulations, examinations must also be administered "so as to best ensure" that the results "accurately reflect the individual's aptitude or achievement level…rather than reflecting the individuals impaired sensory, manual, or speaking skills (except where those skills are factors that the examination purports to measure)." 28 C.F.R. § 36.309(b)(1)(i).

### B. Class Allegations – Violation of Unruh

Defendants' pattern and practice of discriminating against disabled applicants for the USMLE also violates Unruh's guarantee that disabled persons within the borders of California

shall be free from discrimination based on disability. "Unruh…was enacted to 'create and preserve a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' " Flowers v. Prasad, 238 Cal.App.4th 930, 937 [190 Cal.Rptr.3d 33] (2015). "Invidious discrimination is the treatment of individuals in a manner that is malicious, hostile, or damaging." Javorsky v. Western Athletic Clubs, Inc., 242 Cal.App.4th 1386, 1404 [195 Cal.Rptr.3d 706] (2015); Cal. Civil Jury Instructions (CACI) 3060.

However, Unruh's protections are broader than those afforded by Title III of the ADAAA. Under California law, a violation of Unruh is *per se* injurious, and harm is presumed. Koire v. Metro Car Wash, 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195 (1985). Moreover, unlike Title III, which allows a plaintiff to obtain only injunctive relief, Unruh permits a plaintiff to recover *the greater of* treble damages or $4,000 (minimum) per violation, and the "plaintiff who establishes a violation of the ADA…need not prove intentional discrimination in order to obtain damages under section 52." Munson v. Del Taco, Inc. 46 Cal.4th 661, 665 (2009).

An Unruh action may be maintained as a class action. *See, e.g.,* Vargas v. Hampson (1962) 57 Cal.2d 479, 481 [20 Cal. Rptr. 618, 370 P.2d 322]; Burks v. Poppy Construction Co. (1962) 57 Cal.2d 463, 471–472 [20 Cal. Rptr. 609, 370 P.2d 313].

**C.     New and Substantive Facts Have Occurred Since Filing of Original Complaint**

Plaintiff's third goal in filing the First Amended Complaint is to bring the factual allegations in the original Complaint current. Significant and substantive events have occurred since the filing of the original Complaint. For example, the original Complaint alleged as follows:

"49.     On January 20, 2021, Plaintiff submitted the Comprehensive Neuropsychological Evaluation and Report prepared by Dr. Annette Swain, Ph.D., and [sic] board certified neuropsychologist, which is also attached hereto as ***Exhibit "A."*** Plaintiff also submitted a personal statement. Receipt of these materials was acknowledged by "Molly," a Disability Services Specialist at NBME.

50.     To date, Plaintiff has not received a reply from NBME to his third request for disability accommodations. Based on the reaction to his prior submissions, Plaintiff has no reason to believe Defendants will grant this third request either. Thus, Defendants' discriminatory conduct is continuous and ongoing."

We now know what NBME's response was to Plaintiff's submission of Dr. Swain's neuropsychological evaluation. On March 26, 2021, NBME denied Plaintiff's request for accommodations yet again, despite Dr. Swain's conclusion that Plaintiff ought to be granted disability accommodations.

In addition, the original Complaint alleged:

"51.     Until July 1, 2021, Plaintiff is eligible to attempt to re-take "Step 3" of the USMLE because the current policy promulgated by FSMB allows applicants six attempts. Plaintiff is scheduled to re-take "Step 3" by June 30, 2021. This will be Plaintiff's fifth attempt to pass "Step 3."

52.     By reason of the disabilities more specifically pleaded herein, Plaintiff requires disability accommodations to permit him to pass "Step 3," and respectfully requests a preliminary and permanent injunction ordering Defendants to permit Plaintiff to complete a re-take of "Step 3" of

the USMLE by June 30, 2021 and to provide the disability accommodations set forth herein."

We now know Plaintiff sat for Step 3 of the USMLE on June 22, 2021 and barely eked a passing score. Plaintiff no longer needs a preliminary injunction ordering Defendants to provide accommodations for him to re-take Step 3.

This does not render the entire action moot, as Defendants have suggested. Plaintiff contends this bare passing score without accommodations still violates the ADAAA and Unruh because it is not an accurate reflection of his skill or aptitude, but instead, reflects his learning disabilities. Moreover, Plaintiff continues to seek injunctive relief to expunge the prior attempts to pass Step 3 without accommodations, after the point when he first requested accommodations from Defendants. Finally, the fact Plaintiff no longer needs a preliminary injunction to take Step 3 with accommodations has nothing to do with the class allegations of a pattern and practice of disability discrimination by Defendants.

## IV.   LEGAL STANDARD AND ARGUMENT

Federal Rules of Civil Procedure Rule 15 provides that "a party may amend its pleadings [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the court has discretion to grant or deny a request for leave to file an amended pleading. *See,* Zenith Radio Corp v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L.Ed. 2d 77 (1971). ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."). At the same time, courts should grant such requests with "extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981), and courts should not "outright refuse to grant leave to amend without any justifying reason appearing for the denial." Foman v. Davis 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed. 2d 222 (1962).

Courts look to four factors when determining whether to grant leave to amend:

(1) undue delay;

(2) bad faith or dilatory motive;

(3) futility of amendment, and

(4) prejudice to the opposing party.

Howey v. U.S., 481 F.2d 1187, 1190 (9th Cir. 1973). In the 9th Circuit, this test is expressed as having a fifth factor: "whether the plaintiff previously amended [the] complaint." *See,* Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004). This fifth factor is not germane to this motion. Regardless of whether there are four or five factors, generally, all inferences should be drawn in favor of granting the motion. Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 880 (9th Cir. 1999).

Moreover, not all of these factors are of equal importance. Prejudice to the opposing party is the "touchstone of the inquiry under Rule 15(a)" and "carries the greatest weight." *See,* Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2004). Absent prejudice or a strong showing on other factors, a presumption exists under Rule 15(a) favoring granting leave to amend. *id.* The party opposing a motion to amend bears the burden of showing prejudice. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987); *see also,* Kellman v. Whole Foods Mkt., Inc., 2018 U.S. Dist. LEXIS 215274 (N.D. Cal., Mag. J. Beeler).

These standards apply equally when a plaintiff seeks leave to amend to add class allegations. Diunugala v. J.P. Morgan Chase Bank, N.A., 2013 U.S. Dist. LEXIS 70518 (S.D. Cal. 2013, J. Hayes).

A.   **Undue Delay**

"Undue delay by itself is insufficient to justify denying a motion to amend." Wixon v. Wyndham Resort Dev. Corp., 2007 U.S. Dist. LEXIS 80862, at *4-5 (N.D. Cal. 2007), citing Bowles v. Reade, 198 F.3d 752, 757-758 (9th Cir. 1999). Certainly, a moving party may be

precluded from asserting an amendment on the basis of undue delay where the matters asserted in the amendment were known to them from the beginning of the suit. *Id.,* p. 5, citing Komie v. Buehler Corp., 449 F.2d 644, 648 (9th Cir. 1971), this case is different from the facts of Komie where a party waited some 31 months after the answer was filed to amend the pleadings. Further, undue delay does not justify precluding an amendment when the party seeking leave learns through investigation the matters giving rise to the need for amendment. *Id*. Here, Plaintiff's counsel has undertaken investigation since this lawsuit was filed that has led to the class allegations Plaintiff seeks leave to file. These facts were not known to Plaintiff's counsel from the beginning of the suit, and indeed, some facts have only recently been uncovered. *See,* Young Declaration, submitted herewith.

Moreover, this suit is still at an early stage. Neither party has yet to conduct any discovery or take any depositions. Late stage requests for leave to amend, or those made on the eve of a discovery deadline, may rightfully be denied. Solomon v. North Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998). However, this is not a late-stage situation. Indeed, in this case, a full and thorough Rule 26(f) meeting has not yet even occurred.

In any case, Plaintiff has sought leave to amend within the time frame set forth in the Scheduling Order (Doc 9). Thus, "undue delay" should not justify denying Plaintiff leave to file the First Amended Complaint.

### B. Bad Faith or Dilatory Motive

Similarly, Defendants cannot carry their burden of showing that Plaintiff is acting with bad faith or out of a dilatory motive. While Plaintiff may have surmised there were others similarly situated to him, he has not known of the extent of Defendants' discriminatory conduct since the beginning of this suit. These facts were learned through subsequent investigation by Plaintiff's counsel, and the investigation is ongoing. Plaintiff believes that

discovery and depositions will further bear out the facts his counsel has learned informally. These formal procedures have yet to occur.

### B.  Futility of Amendment

"A proposed amendment is futile only if not set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim…" Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). The rational is that a plaintiff "ought to be afforded an opportunity to test his claim on the merits." DCD Programs, *supra,* 833 F.2d at p. 188, citing Foman, *supra,* 371 U.S. at 182, 83 S. Ct. 227, 9 L. Ed. 2d 222.

Here, Plaintiff should be given the same opportunity. Plaintiff's proposed First Amended Complaint states viable claims against these Defendants. In any event, courts defer consideration of the merits of the amended pleading until after it is filed. *Id.,* citing Netbula v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003). The defense will have their opportunity to test the validity of the First Amended Complaint, if they believe it fails to state a claim. Plaintiff should at least have an opportunity to file the First Amended Complaint.

### C.  Prejudice

Moreover, there will be no substantial or undue prejudice to Defendants if leave to file the First Amended Complaint is granted. The issue of prejudice requires a court to focus on the hardship to the Defendants if the amendment is permitted; specifically, the court has to consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories. Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001). Here, Defendants cannot establish prejudice, which is their burden to prove. No discovery has yet occurred, and no depositions have been taken, so this is not a situation where Defendants would be "force[d]…to begin litigating the case again." *See, e.g.,* Lewis v. Chin, 2006 U.S. Dist. LEXIS 106070, at *4 (N.D. Cal. 2006); *c.f.* Cardone Indus.,

Inc. v. Honeywell Int'l, Inc., 2014 U.S. Dist. LEXIS 94259, at *14-15 (E.D. Pa. 2014). The discovery cut off is not looming in the immediate future. *See, e.g.,* Solomon, *supra,* 151 F.3d at p. 1139 [Court upheld denial of motion for leave to amend made "on the eve of the discovery deadline"]; Khasin v. R.C. Bigelow, Inc., 2015 U.S. Dist. LEXIS 88087, at *8 (N.D. Cal. 2015) [Defendant's claim of prejudice insufficient even when substantial discovery had been completed, where discovery cut off was many months away]; Jimenez v. Blueline Rental, LLC, 2016 U.S. Dist. LEXIS 140050, at *7 (E.D. Cal. 2016) [leave to amend three months before close of discovery denied]. Trial is still almost a year away.

These are the kinds of circumstances that demonstrate prejudice. They are wholly absent in this case.

**V.   CONCLUSION**

For these reasons, Plaintiff respectfully requests the Court grant leave to File the First Amended Complaint. Attached is a proposed Order.

Respectfully submitted,

Dated: September 30, 2021                           **YOUNG LAW GROUP**

By: */s/ Eric G. Young, Esq.*
Eric G. Young, Esq.
SBN 190104
411 Russell Ave., 2nd Floor
Santa Rosa, CA 95403
Tel.: 707.527.3637
Fax: 707.520.7272
Email: eyoung@younglawca.com

Attorneys for Plaintiff
CORNELL WELLS, JR.

# CERTIFICATE OF SERVICE

## *Wells v. National Board of Medical Examiners, et al.*
**USDC-ND, San Francisco Division, Case No. 3:21-cv-01279-JSC**

At the time of service, I was over 18 years of age and not a party to this action. My business address is 411 Russell Avenue, Santa Rosa, CA 95403. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On October 1, 2021 , I served the following identified document(s):

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR TRIAL BY JURY;**

**DECLARATION OF ERIC G. YOUNG IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR TRIAL BY JURY;**

**PROPOSE ORDER**

I served the document(s) on all interested parties as follows:

| Name of Party/Counsel Served: | Attorney For: |
|---|---|
| Torryn Taylor Rodgers<br>Robert Burgoyne<br>Perkins Coie LLP<br>505 Howard Street, Ste. 1000<br>San Francisco, CA 94105<br>Tel: 415-344-7000<br>TRodgers@perkinscoie.com<br>RBourgoyne@perkinscoie.com | Attorneys for NATIONAL BOARD OF MEDICAL EXAMINERS, and FEDERATION OF STATE MEDICAL BOARDS, INC. |

I served the above-named documents as follows:

_____**BY FACSIMILE TRANSMISSION** - pursuant to agreement of the parties, from fax number (707) 520-7272 to the fax number(s) set forth above. The facsimile machine I used complied with Rule 2.301(3) and no error was reported by the machine. Pursuant to Rule 2.306(h)(4), I caused the machine to print a transmission record, a copy of which is attached.

_____**BY MAIL** -

_____By personally depositing the documents in a sealed envelope addressed as set forth above with the U.S. Postal Service, postage fully prepaid, sent by regular mail and certified mail, return receipt requested

_____By placing documents enclosed in a sealed envelope addressed as set forth above for collection and mailing. I am readily familiar with my firm's practice of collection and processing correspondence for mailing. In the ordinary course of my firm's business, correspondence is deposited with U.S. postal service on the same day it is placed for collection, postage fully prepaid.

_____**BY PERSONAL SERVICE** - by delivering a copy of the document(s) by hand to the addressee.

_____**BY EXPRESS SERVICE** - by depositing in a box or other facility regularly maintained by the express service carrier or delivering to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served.

___X_____**BY ELECTRONIC TRANSMISSION** - pursuant to agreement of the parties, or by Court order, transmitting a PDF version of the document(s) by electronic mail to the party(ies) identified above using the e-mail address(es) indicated.

_____**BY ELECTRONIC TRANSMISSION ONLY DURING CORONAVIRUS/COVID-19 PANDEMIC** – The document(s) were emailed to the persons at email addresses listed based on notice previously provided that, during the Coronavirus (COVID-19) pandemic, this office will be primarily working remotely, unable to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

_____I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

___X____I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: October 1, 2021                                          **YOUNG LAW GROUP**


                                                               /S/*Eric G. Young*_____
                                                               Eric G. Young