# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **CORNELL WELLS, JR.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**NATIONAL BOARD OF MEDICAL EXAMINERS; FEDERATION OF STATE MEDICAL BOARDS,**<br><br>     **Defendants.** | **CIVIL CASE NO. 3:21-cv-01279-JSC**<br><br>**DECLARATION OF ERIC G. YOUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR TRIAL BY JURY**<br><br>Date: November 18, 2021<br><br>Time: 9:00 a.m.<br><br>Location: Videoconference |

I, ERIC G. YOUNG, declare:

1. I am an attorney duly licensed to practice law before all courts of the State of California and am admitted to this Court. I am the attorney of record for the Plaintiff CORNELL WELLS, JR. in this action. If called upon, I could and would competently testify to the matters stated herein from my own personal knowledge, except for those matters which are stated on information and belief. As to those matters, I believe them to be true.

2. Attached hereto as ***Exhibit "1,"*** and incorporated herein, is a true and correct copy of Plaintiff's proposed First Amended Complaint for Damages; Declaratory and Injunctive Relief; and Demand for Trial by Jury ("First Amended Complaint"). For the Court's convenience, the proposed First Amended Complaint is red-lined to show deletions and highlighted to show additions. For brevity's sake, I also did not attach the referenced exhibits

to this red-lined copy. If leave is granted, a clean copy of the First Amended Complaint along with exhibits can be filed either immediately after the hearing or within one week thereafter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: October 1, 2021                                    _/s/*Eric G. Young, Esq.*_____
                                                          ERIC G. YOUNG, ESQ., Declarant

*EXHIBIT "1"*

ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
411 Russell Avenue, Second Floor
Santa Rosa, California 95403
Tel.:  707.527.3637
Fax:  707.289.8059
Email:  eyoung@younglawca.com

Attorneys for Plaintiff
CORNELL WELLS, JR.
*And Proposed Class Counsel*

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CORNELL WELLS, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS, a not-for-profit corporation; FEDERATION OF STATE MEDICAL BOARDS, INC., a not-for-profit corporation,<br><br>Defendants. | CASE NO.: 3:21-cv-01279-JSC<br><br>**CLASS ACTION COMPLAINT**<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES AND STATUTORY PENALTIES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR TRIAL BY JURY** |

PLAINTIFF, CORNELL WELLS, JR. ("Plaintiff"), by his undersigned attorneys, hereby alleges upon information and belief on behalf of himself and all others similarly situated against Defendants NATIONAL BOARD OF MEDICAL EXAMINERS and FEDERATION OF STATE MEDICAL BOARDS (collectively, "Defendants" or "NBME" or "FSMB"):



## INTRODUCTION

*"I wish for a world that views disability, mental or physical, not as a hindrance but as unique attributes that can be seen as powerful assets if given the right opportunities."* — Oliver Sacks, Neurologist & Author, 1933-2015

1.      This Action arises out of a violation of Title III of the federal Americans With Disabilities Act ("ADA"), as amended by the Americans With Disabilities Act Amendments Act ("ADAA") of 2008, P.L. 110-325, codified at 42 U.S.C. § 12181, *et seq*.; and violation of California's Unruh Civil Rights Act, Cal. Civil Code §§ 51, which also prohibits discrimination against any citizen of the State of California on the basis of disability.

2.      Plaintiff CORNELL WELLS, JR. ("Plaintiff") alleges, on behalf of himself and all others similarly situated, that Defendants NATIONAL BOARD OF MEDICAL EXAMINERS ("NBME") and FEDERATION OF STATE MEDICAL BOARDS, INC. ("FSMB"), individually and in concert with each other, have engaged in a severe and pervasive pattern and practice of ~~discriminated~~ discrimination against ~~him~~ Plaintiff and the class members as alleged herein on the basis of disability in violation of federal and California law by failing to accommodate ~~his~~ disabilities in the provision or administration of the United States Medical Licensing Examination ("USMLE"), which Defendants jointly administer in the State of California and throughout the United States.

3.      Plaintiff respectfully requests injunctive relief ~~a preliminary and permanent injunction~~ under the ADA/ADAAA.

- ~~Issue an order allowing Plaintiff to re-take "Step 3" of the USMLE by on or about July 1, 2021 with disability accommodations consisting of double time plus a private setting; and~~

- ~~Issue an order expunging Plaintiff's prior attempts to pass "Step 3" of the USMLE without accommodations at any time after April 25, 2019, after which time Defendants were placed on actual notice that Plaintiff was a person with disabilities who was requesting and required accommodations (which were denied); and~~

- ~~If injunctive relief cannot issue in time for Plaintiff to re-take "Step 3" of the USMLE by July 1, 2021, issue an order allowing Plaintiff to re-take "Step 3" at the next available opportunity after July 1, 2021 when "Step 3" is administered in California.~~

4.      Plaintiff further respectfully requests declaratory relief, statutory penalties and compensatory damages, including treble damages, in an amount according to proof pursuant to Cal. Civil Code § 52 as well as an award of attorney's fees pursuant to the ADA/ADAAA and Cal. Civil Code § 52.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, ~~and~~ 1343 and 42 U.S.C. § 12188 for claims arising under the ADA/ADAAA. This Court also has supplemental jurisdiction over Plaintiff's state law claims arising under California's Unruh Civil Rights Act pursuant to 42 U.S.C. § 1367.

6.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391. The Defendants are private organizations that do business in the State of California and provide their services in this District. Defendants have frequent, continuous, and systematic contacts with the State of California and this District through the administration and provision of the USMLE in this District sufficient to confer personal jurisdiction over Defendants. Moreover, a substantial part of the acts or omissions

giving rise to this Action occurred in this District by reason of the events that occurred on June 29-30, 2020 as more specifically pleaded herein.

## INTRA-DISTRICT ASSIGNMENT

7.      Pursuant to Civil Local Rule 3-2(c), (d), assignment of this action is proper to either the San Francisco, California Division or Oakland, California Divisions.

## PARTIES

8.      Plaintiff is, and at all times mentioned herein was, an individual with a one or more learning or developmental disability disabilities as more specifically pleaded herein residing who resides within the County of Los Angeles, State of California.

9.      Defendant NBME is a not-for-profit organization headquartered in Philadelphia, Pennsylvania and organized under the laws of the District of Columbia. NBME jointly administers the USMLE, a nationwide licensure examination for physicians and surgeons along with Defendant FSMB. NBME is responsible for processing requests for accommodations by disabled applicants such as Plaintiff who wish to take the USMLE in the State of California. In this capacity, NBME has frequent, continuous, and systematic contacts, and does business in, the State of California where the USMLE is administered.

10.      Defendant FSMB is a national, not-for-profit organization headquartered in Euless, Texas. FSMB represents 71 state medical and osteopathic boards of the United States and its territories. Together with NBME, FSMB jointly sponsors and administers the USMLE in the State of California as well as establishes the general policies and guidelines for test-taking that state medical boards follow as "fellows" of the FSMB, including the number of times an applicant may take the USMLE as well as what

YOUNG LAW GROUP

constitutes a passing score for the USMLE.  This includes the Medical Board.  In this capacity, FSMB has frequent, continuous, and systematic contacts, and does business in, the State of California.

## FACTUAL ALLEGATIONS

### A.    Plaintiff's Academic History & Career as a Psychiatrist

11.    Plaintiff CORNELL WELLS, JR. ("Plaintiff") is a 45-year-old, African-American male and resident of the State of California. He attended Albert Einstein College of Medicine from 2005-2012. He completed his medical residency at California Pacific Medical Center in psychiatry in 2016. In October 2018, Plaintiff was board certified as a psychiatrist.

12.    From 2016-2018, Plaintiff worked as a staff psychiatrist at Kaiser Permanente, Southern California Medical Group, where he focused on patients who have been traditional underserved by mental health professionals.

13.    From 2018-December 2019, Plaintiff worked as a psychiatrist for Pacific Coast Psychiatric Associates, a private psychiatric practice.

14.    Plaintiff enjoyed serving his patients' needs. Plaintiff had no disciplinary record or negative marks of any kind against his medical license.

### B.    Plaintiff is a Person With Disabilities That Substantially Limit Major Life Activities Such as Learning, Reading, Concentration, Visual Perception, and Executive Functioning

15.    Throughout his social and academic life, however, Plaintiff has struggled as a person with disabilities. He has a chronic history of reading comprehension, cognitive processing speed, and executive functioning problems. Plaintiff has been diagnosed by a board certified neuropsychologist with a neuro-developmental



impairment resulting from being born prematurely and at a very low birth weight ("PT/VLBW"). (*See, **Exhibit "A,"*** attached hereto and incorporated herein.)

16.    Secondarily, Plaintiff also has been diagnosed with ADHD, predominantly inattentive type. This condition manifests as inattention when Plaintiff is presented with even ordinary life activities.  It is especially impairing when Plaintiff is presented with complex material or information. (*See, **Exhibit "A."***)  "Step 3" of the USMLE contains this type of complex material.

17.    In addition, Plaintiff has been diagnosed with a learning disorder that impairs his reading comprehension skills as compared to others, another condition that places him at a disadvantage with tests like "Step 3" of the USMLE. (*See, **Exhibit "A."***)

18.    Together, these disabilities substantially impair Plaintiff's language skills, attention to detail, visuo-perception, and higher order executive functioning abilities. (*See, **Exhibit "A."***)  These disabilities substantially limit major activities of Plaintiff's life; indeed, they impair every aspect of his life, even though he has learned to cope with some of the effects.

**C.    The California Medical Board Requires Plaintiff to Re-Take "Step 3" of the USMLE**

19.    Through no fault of his own, and due to its own internal mistake, the Medical Board of California ("Medical Board") discovered in or about March 2019 as a result of a routine audit, that Plaintiff's medical license had been issued to him in error on July 8, 2014.

20.    Plaintiff believed he had successfully met the criteria to practice medicine in the State of California because he was issued a medical license from the Medical Board. However, in March 2019, Plaintiff was informed by the Medical Board he had

Young Law GROUP

actually failed the final portion of the USMLE.  The USMLE is a national physicians' and surgeons' standardized examination consisting of three parts, called "Steps." The final "step" is referred to as "Step 3." Successfully passing all three "steps" of the USMLE is a prerequisite to practicing medicine in California.

21.     Until July 1, 2021, an applicant may have six attempts to pass "Step 3" of the USMLE. On July 1, 2021, FSMB will institute a policy where applicants may only attempt "Step 3" four times in total. When Plaintiff was advised by the Medical Board in March 2019 that he did not pass "Step 3," he had already attempted "Step 3" on two, prior occasions: April 15, 2014 and June 1, 2014.

22.     Plaintiff was further informed by the Medical Board that his license would remain active, pending Plaintiff successfully re-taking "Step 3" as soon as possible.

23.     On April 15, 2019, Plaintiff notified the Medical Board in writing that he would need to request accommodations to take "Step 3" because of ADHD from NBME. After some back and forth communications, it was agreed that Plaintiff could re-take "Step 3" on October 23, 2019.

**D.     Plaintiff's Requests for Reasonable Accommodations**

*1. Plaintiff's First Request for Reasonable Accommodations is
    Denied by NBME and FSMB*

24.     On April 25, 2019, Plaintiff submitted documentation to NBME requesting disability accommodations, including a personal statement, testing scores, and a neuropsychological testing report.

25.     On May 2, 2019, Dr. Mary S. Kelly, clinical psychologist, and Director of Academic Support and Counseling at Albert Einstein School of Medicine, submitted documentation demonstrating Plaintiff had received disability accommodations for test

taking while he was in medical school.

26.     On May 10, 2019, Plaintiff was informed that his request was under review by Jennifer Cohen, secretary at NBME's Disability Services department.

27.     On July 9, 2019, Dr. Lucia McGeehan, Ph.D. and NBME's Disability Assessment Analyst, denied Plaintiff's request for accommodations, stating:

> *"Your documentation does not reflect a record of chronic and pervasive problems managing daily demands for attention, concentration, or organization that has substantially impacted your functioning in school, work, social, or other domains." (See, **Exhibit "B,"** attached hereto and incorporated herein, emphasis added.)*

28.     This statement, of course, does not apply the correct standard for determining whether a person is a person with a disability as required under the ADA/ADAAA or California's Unruh Civil Rights Act, both of which apply to Defendants.

29.     Ms. McGeehan goes on to write:

> *"We will advise the Federation of State Medical Boards (FSMB) Assessment Services to process your exam application without test accommodations." (See, **Exhibit "B,"** emphasis added.)*

*2. Plaintiff Requests an Appeal of the Denial of Reasonable Accommodations, But His Second Request is Also Denied*

30.     Plaintiff timely requested an appeal to review the denial of disability accommodations.

31.     On July 20, 2019, Plaintiff submitted a new personal statement to NBME and a letter of diagnosis from Dr. Gerald Baltz, a certified psychiatric nurse practitioner with over 10 years of experience. Dr. Baltz's letter demonstrated a pervasive pattern of disability impairment throughout Plaintiff's life across multiple domains of living. Dr. Baltz's based this diagnosis on his expertise as well as the fact he had been treating Plaintiff for ADHD since May 2019. In reaching his conclusions, Dr. Baltz reviewed



Plaintiff's full medical history as well as the psychometric testing conducted by Dr. Kelly when Plaintiff was in medical school. Dr. Baltz wrote to NBME:

> *"I can definitely state that Dr. Wells carries a diagnosis of ADHD, primarily inattentive presentation, and has carried this diagnosis since childhood." (See, **Exhibit "C,"** attached hereto and incorporated herein, emphasis added.)*

32.    On August 19, 2019, Catherine Farmer, Psy.D. and Director of Disability Services for NBME, wrote to Plaintiff denying his request for disability accommodations for a second time. This time, instead of applying a "chronic and pervasive" standard, NBME claimed it undertook "an individualized review of [Plaintiff's] request, but took issue with Dr. Baltz's qualifications, writing:

> *"Supporting documentation submitted from qualified professionals is a necessary part of any request for accommodations and is carefully reviewed by NMBE. Though not required to defer to the conclusions or recommendations of an applicant's supporting professional, we carefully consider the recommendation of qualified professionals made in accordance with generally accepted diagnostic criteria and supported by reasonable documentation."* (*See, **Exhibit "D,"** attached hereto and incorporated herein, emphasis added.)

33.    Put in plain terms, NBME concluded Dr. Baltz was merely a "supporting professional," not a "qualified professional," and NBME is not required to defer to a "supporting professional" simply because he concludes an applicant has a disability warranting accommodations.

34.    Of course, at no point during this process, did NBME actually interview Plaintiff, nor was Plaintiff examined or tested by any "qualified professional" affiliated or associated with NBME or FSMB to determine if Plaintiff had ADHD or any other disabilities that might warrant accommodations, despite the supposed "individualized review" NBME claims it conducted. Moreover, in the second denial, NBME did not

specify how it was that Plaintiff's documents was not "reasonable."

35.     NBME is already subject to a Settlement Agreement with the United States Department of Justice ("DOJ") in a matter involving USMLE applicant Frederick Romberg (the "Settlement Agreement"). The Settlement Agreement is referenced on the USMLE website. (*See, **Exhibit "E,"*** attached hereto and incorporated herein.)

36.     Under the terms of the Settlement Agreement, which is public record in DJ #202-16-181, the DOJ found that NBME had wrongfully denied disability test-taking accommodations on Step 1 and Step 2 of the USMLE to application Frederick Romberg. Among other terms, NBME agreed as follows:

> *"12. NBME shall provide reasonable testing accommodations to persons with disabilities who seek to take the USMLE, in accordance with the requirements of 42 U.S.C. § 12189 and the implementing regulations, 28 C.F.R. § 36.309." (See, **Exhibit "F,"*** attached hereto and incorporated herein, emphasis added.)*

37.     Moreover, the Settlement Agreement provides:

> *"13. NBME's requests for documentation shall be reasonable and limited to documentation that establishes (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions. See, 28 C.F.R. Part 36, App. B, at 737 (2010)." (See, **Exhibit "F,"*** emphasis added.)*

38.     The Settlement Agreement goes on to state:

> *"14. NBME will carefully consider the recommendation of qualified professionals who have personally observed the applicant in a clinical setting and have determined – in their clinical judgment and in accordance with generally accepted diagnostic criteria, as supported by reasonable documentation – that the individual is substantially limited in one or more major life activities within the meaning of the ADA..." (See, **Exhibit "F,"*** emphasis added.)*

39.     Finally, and significantly, the Settlement Agreement makes clear that while NBME is "not required to defer to the conclusions or recommendations of an applicant's supporting professional":

> "[NBME must provide an explanation for declining to accept those conclusions or recommendations. (*See, **Exhibit "F,"*** ¶ 17, lines 5-8.)

40.     At no point did NBME abide by its obligations under either the ADA or the Unruh Civil Rights Act with regard to Plaintiff's request for disability accommodations, nor did it comply with the terms of the Settlement Agreement with the DOJ. It rejected, not once but twice, documentation from qualified professionals demonstrating prior disability accommodations as well as a disability entitled to accommodations under the ADA/ADAAA. On the second rejection, NBME failed to provide a sufficient explanation for why it was denying Plaintiff's second request for disability accommodations, other than stating its right not to have to defer to Plaintiff's "supporting professional." NBME failed to provide Plaintiff with any indication for why his documentation was not "reasonable."

**E.     Plaintiff Attempts to Re-Take "Step 3" Without Accommodations on October 22-23, 2019 But Fails to Pass**

41.     Feeling he had no other alternative and that he had exhausted his ability to obtain disability accommodations, and needing to study for "Step 3" of the USMLE, and with the October 22-23, 2019 test-taking date rapidly approaching, Plaintiff reluctantly decided he would attempt to take "Step 3" without any accommodations.  Plaintiff sat for "Step 3" of the USMLE on October 22-23, 2019, his third attempt.

42.     On November 13, 2019, Plaintiff was notified that he failed "Step 3" of the USMLE.  He was further notified that his license had to be placed on inactive status by

December 24, 2019. The Medical Board was also notified, and on November 25, 2019, Christina Thomas, Licensing Manager, emailed a letter to Plaintiff dated November 25, 2019 outlining his options. (*See, **Exhibit "G,"** attached hereto and incorporated herein.*)

43.     According to rules promulgated by FSMB, Plaintiff could not take "Step 3" before a six-month waiting period. The Medical Board's Interim Executive Director, Christine J. Lally, wrote a letter on Plaintiff's behalf to FSMB requesting Plaintiff be permitted to re-take "Step 3" of the USMLE prior to the end of the six-month waiting period. (*See, **Exhibit "H,"** attached hereto and incorporated herein.*)

44.     The Medical Board's letter was forwarded to the USMLE Secretariat. On December 12, 2019, the Secretariat's office, a division of NBME, refused by email communication to the Medical Board and Plaintiff to permit Plaintiff to sit for "Step 3" of the USMLE prior to the end of the six-month waiting period. (*See, **Exhibit "I,"** attached hereto and incorporated herein.*)

**F.     Plaintiff Places His License on Inactive Status & Loses His Job**

45.     On December 24, 2019, Plaintiff placed his medical license on inactive status. This made Plaintiff ineligible for employment as a psychiatrist.  Plaintiff took a leave of absence from his job and was ultimately let go from his employment. He has been unemployed in his chosen field of psychiatry ever since Christmas Day of 2019.

**G.     Plaintiff Sits Again for "Step 3" on June 29-30, 2020, Again Without Accommodations, and Again Fails "Step 3"**

46.     Plaintiff attempted again to re-take "Step 3" of the USMLE at the next opportunity on June 29-30, 2020. This attempt was, once again, without accommodations from either NBME or FSMB.



47.     Due to COVID19 restrictions, the "Step 3" exam was offered in San Francisco, California, which is within this Judicial District.  Plaintiff traveled from Los Angeles to San Francisco in order to re-take "Step 3" in a room along with approximately 15 other people, not all of whom were necessarily taking the USMLE. The room was set up for proctored examinations of various kinds, and it constituted a highly distracting and disabling atmosphere for taking a test by someone with Plaintiff's particular disabilities.

48.     Plaintiff was informed on July 15, 2020 that he failed "Step 3" again. This was Plaintiff's fourth attempt at passing "Step 3."

**H.     Plaintiff Submits a Third Request to NBME for Accommodations to Take "Step 3" of the USMLE, Which Was Denied**

49.     Subsequently, at the cost of several thousands of dollars, on January 20, 2021, Plaintiff submitted a Comprehensive Neuropsychological Evaluation and Report, which is also attached hereto as ***Exhibit "A,"*** prepared by Dr. Annette Swain, Ph.D. a board certified neuropsychologist who has qualified to testify as an expert witness in numerous courts and jurisdictions on psychological issues and disabilities. Plaintiff also submitted a personal statement.

50. Dr. Swain concluded (based on extensive testing and meeting with Plaintiff) that, in addition to ADHD, Plaintiff had a developmental disability that impaired his ability to concentrate as well as executive functioning. Dr. Swain recommended that Plaintiff be accommodated by double testing time and a separate testing room. A Disability Services "Specialist" at NBME acknowledged receipt of Dr. Swain's report. On January 20, 2021, Plaintiff submitted the a Comprehensive Neuropsychological Evaluation and Report prepared by Dr. Annette Swain, Ph.D., and a board certified



neuropsychologist, which is also attached hereto as ***Exhibit "A."*** Plaintiff also submitted a personal statement. Receipt of these materials was acknowledged by "Molly," a Disability Services Specialist at NBME.

51. ~~50.~~ To date, Plaintiff has not received a reply from NBME to his third request for disability accommodations. Based on the reaction to his prior submissions, Plaintiff has no reason to believe Defendants will grant this third request either. Thus, Defendants' discriminatory conduct is continuous and ongoing. On March 26, 2021, despite having gone to great lengths and expense to prove his disability, NBME denied Plaintiff's request for accommodations yet again. In her rejection letter, which is attached hereto as ***Exhibit "J,"*** Catherine Farmer, Psy.D. and Director of Disability Services for NBME, again indicated that an "individualized review" had been performed. However, Plaintiff was never interviewed; neither was Dr. Swain.

52. Farmer insinuated that Plaintiff had provided misleading information to NBME about the disability accommodations he had received while in medical school. Farmer also seized on certain details to criticize and undermine Dr. Swain's thorough neuropsychological evaluation, which had included a battery of over 21 different tests performed on Plaintiff. Farmer concluded by writing:

> "Accommodations are provided when there is documentation of substantial functional impairment as compared to most people, and a rationale to demonstrate that the requested accommodation is appropriate to the setting and circumstance. Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people in the general population, or that the requested accommodations are an appropriate modification of your USMLE Step 3 test administration."

**I.** ~~Plaintiff is Eligible to Re-Take "Step 3" before July 1, 2021, but Plaintiff Requires Accommodations for His Disability, Which Continue to be Denied by Defendants~~ **Plaintiff Sat for "Step 3" on June 22, 2021 Without Accommodations and Barely Passed, But This Does Not Undermine His Claims in This Lawsuit**

51.==53.== Until July 1, 2021, Plaintiff ~~is~~ ==was== eligible to ~~attempt to~~ re-take "Step 3" of the USMLE because the current policy promulgated by FSMB allows ==test== applicants six attempts. ~~Plaintiff is scheduled to re-take "Step 3" by June 30, 2021. This will be Plaintiff's fifth attempt to pass "Step 3."~~ ==FSMB changed this policy on July 1, 2021 to reduce the number of exam attempts to four.==

52.==54.== ~~By reason of the disabilities more specifically pleaded herein, Plaintiff requires disability accommodations to permit him to pass "Step 3," and respectfully requests a preliminary and permanent injunction ordering Defendants to permit Plaintiff to complete a re-take of "Step 3" of the USMLE by June 30, 2021 and to provide the disability accommodations set forth herein.== ==On June 22, 2021, before the new policy limiting the number of test attempts, Plaintiff again sat for Step 3 of the USMLE without accommodations. The minimum passing score for Step 3 was 198. Plaintiff scored exactly 198, even though he scored the same or lower overall in all categories save one.==

==55.== ==The score report Plaintiff received bears the following notation:==

> =="If you tested repeatedly under the same conditions on a different set of items covering the same content, your score would fall within one standard error of the estimate (SEE) of your current score two-thirds of the time. The SEE on this exam is 8 points."==

==56.== ==Stated another way, if Plaintiff tested over and over without accommodations on the same Step 3 content, he would likely fail two-thirds of the time. Put bluntly, Plaintiff got lucky on June 22, 2021, but his bare-minimum passing score of 198 does not "accurately reflect [Plaintiff's] aptitude or achievement level." Instead, it==



reflects his disability impairment, which is forbidden by ADAAA regulations. *See,* 28 C.F.R. § 36.309(b)(1)(i).

57.     Moreover, the mere fact Plaintiff barely passed Step 3 does not render his ADAAA claim moot. In the medical profession, unlike the law, applicants for licensure are required to disclose the number of times they took Step 3 of the USMLE and explain circumstances where it took considerable time to pass Step 3.

58.     In addition, even though Plaintiff was able to sit for the USMLE in June 2021 before FSMB's policy change on test attempts went into effect, Plaintiff had already exceeded the number of attempts allowed by the California Medical Board. California only allows four attempts on the USMLE for licensure. Had Plaintiff been granted accommodations when he first requested them, it is highly likely he would have passed Step 3 in time to recover his California medical license.

**J.      Plaintiff's Prior Two Attempts to Re-Take "Step 3" Without Accommodations Should be Expunged Because Plaintiff Was Entitled to Accommodations on Those Occasions**

53.59. Plaintiff was subjected to disability discrimination and a failure to accommodate on each occasion he was required to re-take "Step 3" with accommodations after April 25, 2019; i.e., October 22-23, 2019 and June 29-30, 2020.

54.60. On April 25, 2019, Plaintiff notified Defendants that he is a person with a disability, and despite Plaintiff providing more than adequate documentation of his disability, Defendants denied Plaintiff's request for disability accommodations.

58.61. Plaintiff should never have been forced to sit for "Step 3" of the USMLE without accommodations once Defendants became aware of his disability. In effect, Defendants' discriminatory conduct caused Plaintiff to unnecessarily waste two



attempts at passing "Step 3" when they knew "Step 3" can only be taken a finite number of times.

59. 62. In so doing, Defendants placed Plaintiff at a disadvantage relative to non-disabled test takers because Plaintiff was forced to sit for "Step 3" on two occasions without any accommodations or even a reasonable explanation or communication for why Plaintiff was denied accommodations.

**K.     If The Court Cannot Grant Plaintiff Injunctive Relief Prior to July 1, 2021, Plaintiff Should be Permitted to Take "Step 3" After July 1, 2021 With Accommodations**

60.     On July 1, 2021, the FSMB's change to the rule regarding the number of times an applicant can take "Step 3" of the USMLE will go into effect. The number of times an applicant can take "Step 3" will be reduced from six times to four times. This rule change will apply to the Medical Board.

61.     When this rule change goes into effect, Plaintiff will no longer be eligible to take "Step 3." He has already surrendered his medical license, and after July 1, 2021, he will be forever barred from regaining licensure and practicing psychiatry. Plaintiff is faced with an emergency situation for which monetary damages will not provide him with a complete and adequate remedy.

62.     The only reason Plaintiff will be rendered ineligible on July 1, 2021 is because, by that time, he will have already sat for "Step 3" four times. However, two of his attempts — October 22-23, 2019 and June 29-30, 2020 - were made without accommodations at a time when Defendants had been notified that Plaintiff was a person with a disability, yet Defendants failed to accommodate Plaintiff. Those last two attempts were foisted onto Plaintiff under unlawful and discriminatory circumstances,

1   and as more specifically pleaded herein, those attempts should not be counted toward

2   the total number of times Plaintiff has attempted to pass "Step 3" of the USMLE.

3       63.    If the Court cannot grant Plaintiff's request for injunctive relief as

4   requested herein by July 1, 2021, Plaintiff should be granted injunctive relief ordering

5   that he be permitted to re-take "Step 3" even after July 1, 2021, with accommodations,

6   two, additional times.

7

8                              **CLASS ALLEGATIONS**

9       63.    Unfortunately, Plaintiffs experience with Defendants is far from unique.

10  Plaintiff believes that Defendants have engaged, and continue to engage in a severe and

11  pervasive, willful and intentional, pattern and practice of discriminating against

12  disabled applicants who wish to take the USMLE, particularly those with learning or

13  development disabilities like Plaintiff.

14

15      64.    NBME has been a named defendant in no less than fourteen reported

16  disability discrimination lawsuits since 1997. The vast majority of those suits ocurred

17  just in the last 10-15 years. This number certainly does not represent the entire universe

18  of cases against Defendants for disability discrimination. Some cases are not reported.

19  Others cases are never pursued to begin with. Some disabled applicants for the USMLE,

20  once they are denied disability accommodations by Defendants, which Plaintiff alleges

21  on information and belief happens as a matter of routine course, may simply forego

22  medical licensure altogether.

23

24      64.    NBME was, itself, the subject of a Settlement Agreement with the DOJ

25  regarding disability discrimination against an applicant wishing to take the USMLE, as

26  more specifically alleged herein. That Settlement Agreement expired in 2014. Since just

27

28



2014, NBME has been the defendant in five, reported disability discrimination lawsuits. This bespeaks a willful pattern of misconduct that affects not only Plaintiff but many other disabled applicants wishing to sit for the USMLE.

65.     Rather than administering the USMLE in an accessible manner that gives equal opportunity and equal reflection of aptitude and skill to disabled individuals, Plaintiff alleges that Defendants view their role in the medical profession as gatekeepers, weeding out "impaired" individuals from the practice of medicine. According to a comprehensive, 2021 study by the Journal of the American Medical Association, entitled *Estimated Prevalence of US Physicians with Disabilities, JAMA Network Open.* 2021;4(3):e211254. doi:10.1001/jamanetworkopen.2021.1254, only approximately 3% of US physicians identify as disabled, compared to 26% of the US population (61 million Americans) as estimated by the Centers for Disease Control.[1]

66.     Plaintiff alleges that there are so few disabled physicians, in part, because of discriminatory actions and conduct such as the conduct perpetrated by Defendants in refusing or failing to grant qualified disabled individuals with testing accommodations. Instead, Defendants throw up obstacle after obstacle in an effort to avoid granting disability accommodations on the only test that is the key to medical licensure. This conduct has the direct effect of purposefully eliminating disabled individuals from the pool of US physicians.

66. This conduct not only violates the ADA/ADAAA, but it also harms the public at large. Many patients are, themselves, disabled and would benefit greatly from access

---

[1] Disability Impacts All of Us, Centers for Disease Control, https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html





to a disabled physician who was otherwise able to carry out their duties. According to the CDC, 1 out of 3 disabled Americans does not have a regular health care provider.[2]

67.    Defendants conduct is also engrained as part of a "grind culture" and "ableism" infecting the medical profession, which leads many in positions of authority to view disabled individuals negatively. According to an article in a leading, online medical journal, StatNews, entitled *Large Majority of Doctors Hold Misconceptions About People with Disablities, Survey Finds,* only 18% of physicians strongly agreed that patients with disabilities are treated unfairly in the health care system. Only 57% of physicians actively welcome disabled individuals into their practices, even though medical practices are supposed to be open and fully accessible to people with disabilities as places of public accommodations, and only 41% believed they could give adequate care to disabled individuals. Physicians are a product of their educational and professional environment in which Defendants play an integral role.

68.    Thus, Plaintiff also brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following proposed class members (the "Rule 23(b)(2) Class"):

> All persons who have learning or developmental disabilities within the meaning of Title III of the Americans With Disabilities Act (42 U.S.C. § 12181), As Amended ("ADAAA"), and California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51, 52) ("Unruh") who have applied to sit for or take "Step 3" of the United States Medical Licensing Exam ("USMLE") in the State of California, who requested accommodations for their disabilities from Defendants, and who had their requests for accommodations denied by Defendants within the three years prior to the date the First Amended Complaint is filed, regardless whether such individuals thereafter attempted to sit for or take any Step of the USMLE without

---

[2] Disability Impacts All of Us, Centers for Disease Control, https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html



accommodations.

69.     <u>Numerosity</u>: The classes above are so numerous that joinder of all individual members in one action would be impracticable. This disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

70.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct or course of conduct perpetrated by Defendants.

71.     <u>Common Questions</u>: There is a well-defined community of interest and common questions of law and fact affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to the use, privileged, and enjoyment of Defendants' services; namely, the USMLE, by reason of Defendants' willful refusal and failure to conduct the USMLE in a manner that is fully accessible to persons with disabilities, as alleged herein.

72.     The questions of law and fact common to the class include, but are not limited to, the following:

      a.     Whether Defendants' conduct as alleged herein violates the ADA/ADAAA, 42 U.S.C. § 12101, *et seq.;*

      b.     Whether Defendants' conduct as alleged herein violated Unruh, Cal. Civ. Code § 51;

      c.     Whether Plaintiff and members of the class are entitled to damages, costs and/or attorney's fees for Defendants' acts and conduct.



73.     Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the class and has no interest antagonistic to the class. Plaintiff will retain counsel who is experienced in the prosecution of class action litigation.

74.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Rule 23(b)(2) Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Rule 23(b)(2) Class as a whole.

75.     Class certification is also appropriate pursuant to Fed R. Civ. P. 23(b)(3). Those questions of law or fact alleged herein that are common to the classes predominate over any questions affecting only individual Rule 23(b)(3) Class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

76.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Rule 23(b)(3) Class. While the aggregate damages which may be awarded to the members of the Rule 23(b)(3) Class are likely to be substantial, the damages suffered by the individual members of the Rule 23(b)(3) Class are comparatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Rule 23(b)(3) Class to individually seek redress for the wrongs done to them. Plaintiff is unaware of any other litigation concerning this controversy already commenced by or against any member of the Rule 23(b)(3) Class. The likelihood of the



individual members of the class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Rule 23(b)(3) Class. Plaintiffs knowns of no difficulty to be encountered in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF

### Violation of the Americans with Disabilities Act
### (42 U.S.C. § 12181, *et seq.*)

64.77. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

65.78. The purpose of the ADA/ADAAA is to prevent discrimination against individuals with a disability disabilities in places of public accommodations, commercial facilities, and private entities that offer certain examination and courses related to educational and occupational certification. Defendants are entities subject to and covered by the requirements of Title III of the ADA/ADAAA.

66.79. Congress provided a clear national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA and when it amended it to expand its reach in 2008 with the passage of the ADAAA. Such discrimination includes barriers to full integration, independent living, and most significant to this case, equal opportunity for persons with disabilities.



67.80. In order to comply with the Title III of the ADA/ADAAA, covered entities like Defendants must, among their many obligations:

- Provide goods and services in an integrated setting, unless separate or different measures are necessary to ensure equal opportunity;

- Eliminate unnecessary eligibility standards or rules that deny individuals with disabilities an equal opportunity to enjoy the goods and services of a place of public accommodation;

- Make reasonable modifications in policies, practices, and procedures that deny equal access to individuals with disabilities, unless a fundamental alteration would result in the nature of the goods and services provided;

- Furnish auxiliary aids when necessary to ensure effective communication, unless an undue burden or fundamental alteration would result.

68.81. Here, Defendants, with full knowledge that Plaintiff and the Rule 23(b)(2) Class was a were and are persons with a disability disabilities, refused to provide reasonable accommodations for "Step 3" of the USMLE, placing placed Plaintiff and the Rule 23(b)(2) Class at a distinct and severe disadvantage in the provision and administration of the USMLE relative to non-disabled persons. Defendants conduct violated the ADA/ADAAA, entitling Plaintiff and the Rule 23(b)(2) Class to the injunctive and declaratory relief requested herein, and Plaintiff invokes his statutory right to attorney's fees and costs.

69.82. By reason of the clear violation of the ADA/ADAAA, Plaintiff has a strong likelihood of success on the merits. Moreover, under the circumstances, Plaintiff will likely suffer irreparable injury if injunctive relief is not granted. In addition, the balance of hardships favors Plaintiff because Defendants will not be put to an undue burden or expense if accommodations are given to Plaintiff. Finally, because of the clear Congressional intent to protect persons with disabilities and provide them with equal

opportunity, the public interest favors granting an injunction. (*See, Winter v. Natural Res. Def. Council (Winter)* (2008) 129 S. Ct. 365, 370–87.)

WHEREFORE, Plaintiff prays for Judgment as set forth herein.

## SECOND CLAIM FOR RELIEF

### Violation of California Unruh Civil Rights Act
### (Cal. Civil Code §§ 51, 52)

70.83. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

71.84. California's Unruh Civil Rights Act, Cal. Civil Code § 51, 52 ("Unruh") permits a private cause of action for disability discrimination and provides that a plaintiff may obtain statutory penalties, compensatory damages, treble damages, and injunctive relief as well as attorneys' fees.

72.85. In answering a question certified to it by the 9th Circuit – whether disability discrimination under Unruh must be intentional? – the California Supreme Court answered: No. (*See, Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661.)

73.86. In reaching this conclusion, the *Munson* Court declared that Unruh is "preventive" in nature and must be interpreted broadly so as to effect the intent of the California Legislature, which is to "create and preserve a nondiscriminatory environment in California…by 'banishing' or 'eradicating' arbitrary, invidious discrimination by [business] establishments." (*Munson, supra,* 46 Cal.4th at 666.)

74.87. The *Munson* Court also recognized that it is "the intent of the Legislature in enacting [Unruh] to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990…and to retain California law when it provides

more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." (*Munson, supra,* 46 Cal.4th at 668.)

74.88. Under California law, a violation of Unruh is *per se* injurious and harm is presumed. (*Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195].) Plaintiff is entitled to three times his actual damages, but in no case less than $4,000 per violation, even if there are no actual damages. (Cal. Civil Code, § 52(a).) "Actual damages" under Unruh includes both special and general damages. (Cal. Civil Code, § 52(h).)

75.89. In this case, as more specifically pleaded herein, Defendants have denied Plaintiff and the Rule 23(b)(3) class reasonable disability accommodations in the taking of "Step 3" of the USMLE, which constitutes disability discrimination.  Alternatively or in addition to, Defendants have aided each other, in an unlawful practice, pattern or scheme of denying reasonable accommodations to Plaintiff and the Rule 23(b)(3) class, which is ongoing and continues to the present day. Finally, Defendants have made an unlawful distinction about the nature and extent of Plaintiff's disability as well as the disabilities of the Rule 23(b)(3) class that led to a denial of reasonable accommodations in the taking "Step 3" of the USMLE.

76.90. In so doing, Defendants have discriminated against Plaintiff and the Rule 23(b)(3) class based on disability, which is conduct prohibited by Unruh.

77.91.  As pleaded above, Defendants conduct need not be intentional to constitute a violation of Unruh, although Plaintiff alleges that, at all pertinent times, Defendants' conduct was, in fact, intentional.

78.92. Moreover, Defendants have no legitimate grounds for engaging in such unlawful conduct. Defendants have no rational basis upon which to deny Plaintiff or the Rule 23(b)(3) class members reasonable disability accommodations in taking "Step 3" of the USMLE. Defendants have only their own unlawful and discriminatory perceptions of Plaintiff and his the class members' disabilities, and the equally unlawful conclusion emanating from those perceptions, which are not based on any empirical evidence.

79.93. Without ever having examined, tested, or evaluated Plaintiff, Defendants concluded that Plaintiff is not a disabled person entitled to reasonable accommodations under either federal or California law when, in fact, Plaintiff is a person with disabilities entitled to protection under both the ADA/ADAAA and Unruh. Plaintiff is informed and believes, and thereon alleges, that this is Defendants' routine course of conduct with respect to the class members as well.

80.94. Finally, Plaintiff has on two, prior occasions provided Defendants with sufficient proof his disability by providing Defendants with copies of evaluations, reports, and diagnoses of mental health professionals. Despite this proof, and without articulating any undue burden Plaintiff's request for reasonable accommodations would cause, Defendants have persisted, and will continue to persist, in denying reasonable accommodations to Plaintiff in taking "Step 3" of the USMLE, warranting injunctive relief.

81.95. Defendants' conduct directly and proximately prevents Plaintiff from restoring his medical license and returning to the practice of psychiatric medicine in the State of California. Defendants' conduct prevents the class members from practicing medicine in the State of California. In essence, Defendants' unlawful conduct has

erected a discriminatory barrier requiring Plaintiff and the class members to take "Step 3" of the USMLE on terms and under conditions that are *different from* or *not substantially similar* to the terms and conditions under which a nondisabled person would take "Step 3" of the USMLE. Both the ADA/ADAAA and Unruh forbid this conduct and the outcome.

82.96. As a direct and proximate result of Defendants' refusal to grant reasonable accommodations to Plaintiff, Plaintiff and the class have has suffered, and will continue to suffer, economic and noneconomic damages in the form of lost income from the practice of psychiatric medicine as well as severe emotional distress, humiliation, embarrassment, worry, anxiety, and general damages to his/their psyche, all in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays for Judgment as set forth herein.

### THIRD CLAIM FOR RELIEF

### Declaratory Relief

83.97. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

84.98. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny or will deny, that by refusing to grant Plaintiff reasonable accommodations in taking "Step 3" of the USMLE, Defendants have failed to comply with all applicable laws protecting the rights of disabled persons like Plaintiff, including but not limited to Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.* and California's Unruh Civil Right Act.

99. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for Judgment as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for Judgment from this Court as follows:

1. ~~Declare~~ A Declaratory Judgment that at the commencement of this action, Defendants' were in violation of the specific requirements of Title III of the ADA/ADAAA as alleged herein, the relevant implementing regulations of the ADA/ADAAA, and California's Unruh Civil Rights Act in that Defendants ~~failure~~ failed or refused to provide reasonable accommodations to Plaintiff ~~in~~ and the class members to take "Step 3" of the USMLE; ~~violated and violates Title III of the Americans with Disabilities Act and California's Unruh Civil Right Act;~~

2. Issue a preliminary and/or permanent injunction pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), and California Civil Code § 52 requiring and directing Defendants to take all steps necessary to bring themselves into compliance with the requirements of the ADA/ADAAA and the Unruh Civil Rights Act in the administration and provision of Step 3 of the USMLE, including but not limited to the provision of ~~provide~~ reasonable disability accommodations to ~~Plaintiff and~~ the class members ~~in taking~~ who wish to take "Step 3" of the USMLE~~; namely, that Plaintiff be given double time to take "Step 3" as well as provide Plaintiff with a private, test- taking environment that minimizes distractions to the greatest extent possible;~~

3. Issue a preliminary and/or permanent injunction expunging from Plaintiff's record, or the record of any member of the class, any ~~Plaintiff's~~ attempts to take "Step 3" of the USMLE without accommodations ~~on October 22-23, 2019 and June 29-30, 2020~~ ~~so that Plaintiff will be eligible to take "Step 3" with accommodations even after July 1,~~ ~~2021,~~ after the point when the affected individuals requested disability accommodations from Defendants and provided reasonably sufficient documentation in support of the requests;

4. Award Plaintiff and the class members compensatory damages, in an amount according to proof under Cal. Civil Code § 52;

5. Award Plaintiff and the class members statutory penalties in the amount of three times ~~Plaintiff's~~ actual damages according to proof at the time of trial, or no less than $4,000 per violation pursuant to Cal. Civil Code § 52;

6. Award reasonable attorneys' fees and costs;

7. Award interest on all such sums; and

8. For such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a Trial by Jury on all claims or causes of action herein that are so triable.

Respectfully submitted,

Date: October 1, 2021                              **YOUNG LAW GROUP**


By: *<u>/s/ Eric G. Young, Esq.</u>*
ERIC G. YOUNG, ESQ., Attorneys for
Plaintiff CORNELL WELLS, JR.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

