1 | Torryn Taylor Rodgers, Bar No. 319126
TRodgers@perkinscoie.com
2 | PERKINS COIE LLP
505 Howard Street, Suite 1000
3 | San Francisco, California 94105
Telephone: 415.344.700
4 | Facsimile:  415.344.7050

5 | Robert A. Burgoyne (admitted *pro hac vice*)
RBurgoyne@perkinscoie.com
6 | PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
7 | Washington, D.C. 20005-3960
Telephone: 202.654.6200
8 | Facsimile:  202.654.6211

9 | Attorneys for Defendants
NATIONAL BOARD OF MEDICAL EXAMINERS,
10 | and FEDERATION OF STATE MEDICAL BOARDS, INC.

11

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14

15 | CORNELL WELLS, JR.,                                Case No. 3:21-cv-01279-JSC

16 |                    Plaintiff,                      **DEFENDANTS' PARTIAL OPPOSITION**
                                                        **TO PLAINTIFF'S MOTION FOR LEAVE**
17 |          v.                                        **TO FILE FIRST AMENDED**
                                                        **COMPLAINT**
18 | NATIONAL BOARD OF MEDICAL
EXAMINERS, a not-for-profit corporation,               Date:    November 18, 2021
19 | FEDERATION OF STATE MEDICAL                        Time:    9:00 a.m.
BOARDS, INC., a not-for-profit corporation,            Judge:   Hon. Jacqueline Scott Corley
20 |
                   Defendants.
21 |

22

23 |         More than seven months after initiating this action, Plaintiff Cornell Wells, Jr. ("Plaintiff"

24 | or "Dr. Wells") seeks leave to amend his complaint to plead the case as a class action, add

25 | "enhanced" allegations to his claim under the California Unruh Civil Rights Act, and update certain

26 | factual allegations.  Pl.'s Mot. for Leave to File First Amended Complaint (D.E. 43) at 1-2.

27

28

1         While they do not oppose Dr. Wells's motion in its entirety,[1] the National Board of Medical

2   Examiners ("NBME") and the Federation of State Medical Boards ("FSMB") (collectively,

3   "Defendants") oppose Dr. Wells's request to add putative class claims and allegations to his

4   complaint.  Dr. Wells' proposed class claims would ultimately fail, as he cannot satisfy any of the

5   prerequisites to class certification (numerosity, commonality, typicality, and adequacy of

6   representation).  The Court, however, should not and need not weigh in on these class action-related

7   issues in deciding whether Dr. Wells's proposed amendments should be denied.[2]  Dr. Wells's

8   motion should be denied because he unduly delayed in seeking to add class claims, to Defendants'

9   prejudice.

10         The updated factual allegations in Dr. Wells's proposed amended complaint that are

11   unrelated to his putative class claims demonstrate that the primary issue in dispute between Dr.

12   Wells and Defendants is now moot.  Dr. Wells initiated this litigation seeking an injunction that

13   would grant him extra testing time and other accommodations on Step 3 of the United States

14   Medical Licensing Examination.  He no longer has any need or claim for such relief because he has

15   now passed the Step 3 examination, without accommodations.  In addition, after passing the Step

16   3 exam, he applied to be licensed in multiple states and has been licensed by at least two of those

17   states (Colorado and New York).  This lawsuit should therefore be moving towards orderly

18   resolution, not enlargement with frivolous class claims.

19         Dr. Wells's motion to amend his complaint to add class claims and related allegations

20   should be denied, consistent with the requirement that the Federal Rules of Civil Procedure should

---

21

22       [1] Without conceding the accuracy or merit of any of Dr. Wells's proposed new allegations, Defendants do not oppose Dr. Wells's motion to amend to the extent he seeks to update allegations

23   in the complaint relating to his personal situation.  For ease of reference, Defendants would not oppose the filing of a First Amended Complaint as shown at Exhibit 1 hereto, which works off of

24   the proposed amended complaint filed with Dr. Wells's motion.  In this document, Defendants: (1) added strikethroughs to any proposed amendments to which they do not consent and (2) re-typed

25   some language from the original pleading shown as stricken by Dr. Wells to revert to allegations regarding Dr. Wells rather than any putative class members.  Defendants also do not oppose any

26   conforming changes that may be needed in paragraph numbering.

27       [2] "[T]he Ninth Circuit long ago explained that 'compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim,' … and it follows ... that Rule 23 should also not be

28   tested on a motion for leave to amend."  *Barnett v. County of Contra Costa*, No. 04-4437 TEH, 2010 WL 2528523, at *4 (N.D. Cal. June 18, 2010) (citation omitted).

154178781.1

1  be administered and construed "to secure the just, speedy, and inexpensive determination of every

2  action and proceeding."  Fed. R. Civ. P. 1.

3  **BACKGROUND**

4  **I.      The United States Medical Licensing Examination**

5       Defendants jointly own the United States Medical Licensing Examination ("USMLE"), a

6  standardized examination designed to assess an examinee's ability to apply the knowledge and

7  demonstrate the fundamental skills that constitute the basis of safe and effective patient care.

8  Licensing authorities across the country, including the Medical Board of California, rely upon the

9  USMLE in evaluating the qualifications of individuals seeking an initial license to practice

10  medicine.

11       Three "Step" exams make up the USMLE, taken at different times in the graduate medical

12  education process:  Step 1, Step 2 Clinical Knowledge ("Step 2 CK"), and Step 3.  Step 3 is the

13  final examination in the USMLE sequence and, if passed, generally leads to a state license to

14  practice medicine without supervision.

15       Examinees take the USMLE under the same standard conditions.  NBME provides

16  accommodations, however, to individuals who document they have a disability within the meaning

17  of the ADA and that such accommodations are necessary to afford them access to the examination.

18  In all instances, NBME's objective is to ensure "individuals with *bona fide* disabilities receive

19  accommodations, and that those without disabilities do not receive accommodations that they are

20  not entitled to, and which could provide them with an unfair advantage…. As administrator of the

21  national exam used by … states for licensing medical doctors, [NBME] has a duty to ensure that

22  its examination is fairly administered to all those taking it."  *Powell v. Nat'l Bd. of Med. Exam'rs*,

23  364 F.3d 79, 88-89 (2d Cir. 2004).  NBME also has a duty to protect the integrity of USMLE scores,

24  given the USMLE's role in helping jurisdictions ensure the minimum competency of licensed

25  physicians.

26  **II.     Dr. Wells Has Passed All Steps of the USMLE, Under Standard Testing Conditions**

27       Dr. Wells took, and passed, Step 1, Step 2 CK, and Step 2 CS (a clinical skills component

28  of the USMLE that was suspended in May 2020 due to the COVID-19 pandemic and subsequently

discontinued) of the USMLE under standard testing conditions.  He did not seek accommodations on any of these Step examinations.

Dr. Wells took Step 3 of the USMLE in April and June of 2014 and did not obtain a passing score on either attempt.  Nevertheless, presumably through inadvertence, the Medical Board of California issued Dr. Wells a license to practice medicine on or about July 8, 2014.  On information and belief, Dr. Wells did not notify the Medical Board that he had failed to pass the Step 3 examination or otherwise inquire as to why he received a license despite his failure to pass an exam that was required for licensure.  It is Defendants' understanding that Dr. Wells practiced medicine in California for several years pursuant to that license.

According to Dr. Wells, the Medical Board "discovered in or about March 2019 as a result of a routine audit, that Plaintiff's medical license had been issued to him in error on July 8, 2014." Complaint ¶ 19.

In April 2019, and in advance of retaking the Step 3 exam, Dr. Wells submitted documentation to NBME as part of a request for testing accommodations on Step 3.    Dr. Wells sought accommodations based on a diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD).  NBME thoroughly reviewed all his supporting documentation.  It also sought the recommendation of an outside ADHD expert.

Based on NBME's review and the recommendation of its external expert, NBME denied Dr. Wells's request for accommodations.  As explained, in part, in NBME's July 9, 2019 decision letter:

> ADHD is a neurodevelopmental disorder that begins in childhood.  Even if not formally diagnosed in childhood, the essential feature of ADHD is persistent patterns of inattention and/or hyperactivity-impulsivity that interferes with functioning or development.  ADHD usually results in a long history of chronic impairment and the diagnosis affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school.  According to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), manifestation of the disorder must be present in more than one setting (e.g., home and school, work).  It needs to be documented beyond self-report that symptoms have consistently and pervasively disrupted functioning over time in multiple behavioral domains.  Your documentation does not reflect a record of chronic and pervasive problems managing daily demands for attention, concentration, or organization that has substantially impacted your functioning in school, work, social, or other domains.

1
2
3
4
5

> As best one can tell, you progressed throughout your education with an academic record and scores on timed standardized tests sufficient to gain admission to and graduate from college, earn a master's degree, and matriculate and complete at least two years of medical school, all without formal accommodations. Regarding your performance on standardized tests, our records show that you successfully completed USMLE Step 1, Step 2 CK, and Step 3 CS under standard testing conditions. Taken altogether, the documentation provided does not demonstrate impaired functioning relative to most people or that standard test timing is a barrier to your access to Step 3.

6
7
8

Dr. Wells sought reconsideration of this decision, and his request was denied by letter dated August 19, 2019. Dr. Wells took the USMLE Step 3 examination in October 2019 under standard conditions, and he did not pass.[3]

9
10

Dr. Wells took the USMLE Step 3 examination again in June 2020 under standard conditions, and again he did not pass. He did not request accommodations on this administration.

11
12
13
14

Dr. Wells submitted another request for testing accommodations on the Step 3 exam on or around January 20, 2021. NBME again thoroughly reviewed his request. It also sought the recommendation of a different external expert. Based on NBME's review and the recommendation of the external expert, NBME denied Dr. Wells's request by letter dated March 26, 2021.

15
16
17
18

Dr. Wells took the USMLE Step 3 examination in June 2021 under standard conditions, and he passed. Dr. Wells has thus passed all Steps of the USMLE. On information and belief, he was granted a medical license in Colorado on September 1, 2021, and in New York on September 14, 2021, and is awaiting decisions in Washington and perhaps California.

19

**III.    Procedural History**

20
21
22
23

Dr. Wells filed his complaint on February 23, 2021. NBME filed its answer on April 9, 2021, and FSMB filed its answer on May 3, 2021. Dr. Wells could have amended his complaint as a matter of course within 21 days of serving his complaint on the Defendants, or within 21 days of Defendants' answer, but he did not do so. *See* Fed. R. Civ. P. 15(a)(1).

24
25
26

The parties submitted their initial joint case management statement on August 6, 2021. The statement reflected the parties' agreed position that "[t]his matter is not proceeding as a class action;" likewise, Dr. Wells made no mention of possible class-based claims in his discussion of

27
28

---

[3] Dr. Wells alleges that he placed his California medical license on inactive status on or around December 14, 2019. *See* Complaint ¶ 45.

154178781.1

his planned motion to seek leave to amend his complaint. *See* Dkt. 36 at 13, 18.

Case deadlines and trial dates were established following an August 12, 2021 case management conference. *See* Dkt. 39 (Pretrial Order). Dr. Wells's counsel discussed his intention to file an amended complaint during the conference, but no mention was made of adding class-based claims.

The Court's Pretrial Order established a more expedited schedule than Defendants had proposed, based upon Dr. Wells's stated interest in moving the case more quickly towards resolution. *Compare* Dkt. 36 at 21 (Joint Case Management Statement, with the parties' respective proposed schedules) *with* Dkt. 39 at 1 (schedule provided in the Pretrial Order). The Court also scheduled a further Case Management Conference for September 30, 2021, and requested an updated Joint Case Management Conference Statement by September 23, 2021. The Court stated it would "be particularly interested in the timing and form of alternative dispute resolution." Dkt. 39 at 1.

The parties filed an Updated Joint Case Management Statement on September 24, 2021 (Dkt. 41). In that submission, Dr. Wells stated for the first time that "[o]nce Plaintiff amends the Complaint, this matter may be one that should be certified as a class." *Id.* at 3.

Dr. Wells filed a motion for leave to amend on October 1, 2021, the last day to do so under the Court's August 12, 2021 Pretrial Order (Dkt. 39).

## ARGUMENT

Dr. Wells did not amend his complaint within twenty-one days of service or twenty-one days of Defendants' answering the complaint, as he could have done without leave of Court. *See* Fed. R. Civ. P. 15(a)(1). Therefore, he may amend his complaint only with Defendants' consent or leave of court. *See* Fed. R. Civ. P. 15(a)(2).

Although Rule 15(a) "should be interpreted with 'extreme liberality,' … leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted). A motion for leave to amend may be denied "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment,

1   [and] futility of amendment.'"  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir.

2   2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3         Dr. Wells's motion for leave to amend should be partially denied given his undue delay in

4   asserting his putative class claims.  Dr. Wells concedes that "a moving party may be precluded

5   from asserting an amendment on the basis of undue delay where the matters asserted in the

6   amendment were known to them from the beginning of the suit."  Pl. Br. at 14-15.  Indeed,

7   "[r]elevant to evaluating the delay issue is whether the moving party knew or should have known

8   the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388

9   (citations omitted); *see also Shapiro v. Abraham Lincoln Univ. Sch. of Law*, No. 10-3177, 2011

10  WL 13272256, at *6 (C.D. Cal. May 4, 2011) ("Courts in this circuit have repeatedly denied leave

11  to amend in situations where plaintiff knew of the facts underlying the proposed new claims prior

12  to filing an earlier complaint.") (citations omitted), *aff'd*, 648 F. App'x 713 (9th Cir. 2016).  To be

13  clear, Dr. Wells's proposed class claims are not supported by any new "facts" that actually support

14  class certification.  They are based on information and theories that Dr. Wells could have advanced

15  in his original complaint (if at all).

16        Dr. Wells vaguely argues that "Plaintiff's counsel has undertaken investigation since this

17  lawsuit was filed that has led to the class allegations Plaintiff seeks leave to file.  These facts were

18  not known to Plaintiff's counsel from the beginning of the suit, and indeed, some facts have only

19  recently been uncovered."  Mem. in Supp. of Pl.'s Mot. for Leave to File First Amended Comp.

20  ("Pl. Br.") at 15.  Dr. Wells does not describe his investigation or identify the "only recently

21  uncovered" facts in his brief, but a review of his proposed class allegations reveals few new "facts"

22  and no information or theories that were unavailable to Dr. Wells at or around the time he filed his

23  original complaint.  The first apparent new "fact" is the unremarkable point that NBME has been

24  named as a defendant in other lawsuits.  *See* Proposed First Amended Complaint ¶ 64.  Putting

25  aside the question whether this information actually supports class certification (it does not), it

26  could have been easily "investigated" by Dr. Wells's counsel before he filed suit.  The second

27  apparent new "fact" is NBME's settlement agreement with the United States Department of Justice.

28

1   *See id.* ¶ 64.[4]  This "fact" was known to Dr. Wells at the time he filed his original complaint—

2   where he discusses the very same settlement agreement at some length.  *See* Complaint (Dkt. 4) ¶¶

3   35-40.  The third apparent new "fact" consists of two publicly available research articles referenced

4   by Dr. Wells, from which he speculates that Defendants are somehow responsible for "purposefully

5   eliminating disabled individuals from the pool of US physicians."   Proposed First Amended

6   Complaint ¶¶ 65-67.   Neither of these articles discusses, or even mentions, NBME, FSMB, the

7   USMLE, or testing accommodations, and one of the articles predates his original complaint and the

8   other article is dated approximately two weeks later.[5]

9         Dr. Wells has done little to advance this litigation over the past seven months, and

10   Defendants had reasonably assumed that he might dismiss his complaint altogether given that he

11   has now passed Step 3 of the USMLE under standard conditions and the only viable aspect of his

12   Americans with Disabilities Act (ADA) claim—his request for injunctive relief requiring the

13   provision of testing accommodations on the examination—is now moot.  His belated decision to

14   seek leave to amend his complaint with insubstantial class allegations that could have been included

15   in his initial complaint (if he believed them to be genuinely viable) suggests that his current motion

16   may be a misguided tactical maneuver to increase his perceived leverage in any settlement

17   discussions.

18         Dr. Wells's delay is also prejudicial to Defendants.  The parties prepared an initial case

19   management statement and participated in two case management conferences with the Court.  A

20   scheduling order is in place, including a trial date.  If Dr. Wells's proposed late amendments are

21   allowed, it will necessitate significant revisions to the scheduling order, including time for class

22   certification briefing and a possible appeal from any decision on class certification.  *See Kesecker*

23   *v. Marin Cmty. Coll. Dist.*, No. 11-4048 JSC, 2012 WL 3235936, at *4 (N.D. Cal. Aug. 6, 2012)

24   ("Plaintiff's proposed amended complaint adds two new defendants and an additional cause of

25   _____

26   [4] There are two paragraphs numbered "64" in the Proposed First Amended Complaint.  The DOJ
settlement agreement is addressed in the second paragraph 64.

27   [5] *See* www.statnews.com/2021/02/01/large-majority-of-doctors-hold-misconceptions-about-
people-with-disabilities-survey-finds/ (Feb. 1, 2021) *and*

28   https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2777420 (Mar. 12, 2021).

1    action and would require continuing the entire case management schedule.  Given that this claim

2    was not included earlier due to ignorance of the law and not due to Plaintiff's ignorance of the

3    identities of the new proposed defendants or the underlying facts that give rise to the new cause of

4    action, the Court finds that such an amendment would cause undue delay thereby prejudicing

5    Defendant.") (denying motion to amend).  Dr. Wells's putative class allegations needlessly delay

6    resolution of a case in which the primary issue between the parties—Dr. Wells's entitlement to

7    testing accommodations—is moot and any remaining issues are specific to Dr. Wells.

8         As a fallback, Dr. Wells argues that he filed his motion for leave to amend within the time

9    frame (the very last day) set forth in the Scheduling Order, *see* Pl.'s Br. at 15, but simply complying

10   with the date in a scheduling order is not dispositive on the issue of timeliness.  *See*

11   *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("In assessing

12   timeliness, we do not merely ask whether a motion was filed within the period of time allotted by

13   the district court in a Rule 16 scheduling order.").

14        Defendants strongly disagree that class certification is warranted here under any of the

15   relevant factors, but that issue is not presently before the Court.  Defendants should not have to

16   engage in the burden and expense of moving to strike the class allegations or engaging in class

17   certification briefing, when leave to amend is properly denied based on undue delay and prejudice

18   to Defendants.

19                                   **CONCLUSION**

20        Plaintiff's motion for leave to amend to assert class claims should be denied.  Amendment

21   of his individual claims in the manner set forth in Exhibit 1 hereto is not opposed by Defendants.

22

23

24

25

26

27

28

154178781.1

1

2    DATED:  October 15, 2021                 **PERKINS COIE LLP**

3

4                                         By   /s/ Robert A. Burgoyne

                                            Torryn Taylor Rodgers

5                                             Robert A. Burgoyne

6                                  Attorneys for Defendants

7                                  NATIONAL BOARD OF MEDICAL
                                 EXAMINERS and FEDERATION OF STATE

8                                  MEDICAL BOARDS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

154178781.1