Aaron Joseph Ver, Bar No. 295409
Aver@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile:  415.344.7050

Robert A. Burgoyne (admitted *pro hac vice*)
RBurgoyne@perkinscoie.com
Caroline M. Mew (admitted *pro hac vice*)
CMew@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile:  202.654.6211

Attorneys for Defendants
NATIONAL BOARD OF MEDICAL EXAMINERS,
and FEDERATION OF STATE MEDICAL BOARDS, INC.

Eric G. Young, Bar No. 190104
eyoung@younglawca.com
YOUNG LAW GROUP
411 Russell Avenue
Santa Rosa, California 95403
Telephone: 707.527.3637
Facsimile:  707.289.8059

Attorneys for Plaintiff
CORNELL WELLS, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELL WELLS, JR.,<br><br>         Plaintiff,<br><br>     v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS, a not-for-profit corporation, FEDERATION OF STATE MEDICAL BOARDS, INC., a not-for-profit corporation,<br><br>         Defendants. | Case No. 3:21-cv-01279-JSC<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    June 2, 2022<br>Time:    1:30 p.m.<br>Judge:   Hon. Jacqueline Scott Corley |

**1.     JURISDICTION & SERVICE**

The parties have no new, additional information to provide to the Court that was not included in their initial Joint Case Management Statement or their prior Updated Joint Case Management Statement.

**2.     FACTS**

Defendant's Position:

Defendant has no new, additional information to provide to the Court that was not included in the initial Joint Case Management Statement or in the prior Updated Joint Case Management Statements. Defendant reserves the right to supplement factual details as they are learned through discovery.

Plaintiff's Position:

Plaintiff has received his licensure in the following states: Georgia, Washington, Virginia, New York, and Colorado on the dates listed above by Mr. Burgoyne. Plaintiff has been able to secure a temporary employment position as a physician providing psychiatric care at a Kaiser-affiliated medical facility in Virginia, which recently ended due to the expiration of his contract. Plaintiff has been able to secure temporary, full-time employment with the Veterans' Administration (V.A.) as a psychiatrist, and coincidentally, he has been relocated to a facility in Santa Rosa, California, which is near my office. Plaintiff is currently looking for temporary housing in Sonoma County. Plaintiff's primary residence, however, remains in Los Angeles, California. His home is there as all of his personal belongings (which are in a storage facility) except for clothes, toiletries, and necessary items of personal use he took with him to Virginia. His social and personal connections are in California. Plaintiff has had no offers for permanent employment anywhere, either full or part-time.

Because this new, temporary employment position is with the V.A., it does not require Plaintiff to be licensed in California. Regarding Plaintiff's application for licensure in California, Plaintiff believes that while his licensure may still be pending, he has received no indication from the California Medical Board that he will ever be licensed in California.

## 3. LEGAL ISSUES

The legal issues remain the same as stated in the parties' initial Joint Case Management Statement.

## 4. MOTIONS

| | | |
|---|---|---|
| 2/23/2021 | Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Dkt. 5) | Granted 2/24/21 (Dkt. 10) |
| 4/9/2021 | NBME's Motion for Leave to Appear Pro Hac Vice (Robert Burgoyne) (Dkt. 22) | Granted 4/13/21 (Dkt. 23) |
| 5/4/21 | FSMB's Motion for Leave to Appear Pro Hac Vice (Robert Burgoyne) (Dkt. 30) | Granted 5/5/21 (Dkt. 31) |
| 9/30/21 | Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. 43) | Granted 11/18/21 (Dkt. 50) |
| 3/1/22 | Joint Discovery Dispute Letter (Dkt. 61) | Resolved 3/7/22 (Dkt. 65) |
| 3/3/22 | NBME's and FSMB's Motion for Leave to Appear Pro Hac Vice (Caroline Mew) (Dkt. 62) | Granted 3/3/22 (Dkt. 63) |

## 5. AMENDMENT OF PLEADINGS

Plaintiff filed his First Amended Complaint on December 2, 2021. (Dkt. 51)

## 6. EVIDENCE PRESERVATION

Defendant's Position:

The parties conferred regarding electronically stored information, with specific reference to the Court's Rule 26(f) Checklist.

Plaintiff's Position:

On November 17, 2021, the parties conferred regarding electronically stored information, with specific reference to the Court's Rule 26(f) Checklist. The parties do not anticipate significant, future evidence preservation disputes; however, Plaintiff advises the Court there may

be a small number of documents dating from the time when he first began communicating with Defendants and/or the California Medical Board about the need for accommodations that are stored electronically on an old laptop which is, itself, in storage in Southern California. Plaintiff's counsel does not have access to this laptop but believes it is sequestered and secure. Plaintiff is on the East Coast and cannot reasonably access the laptop either. Because of email communications between counsel, Plaintiff believes that further discussion by counsel will either be necessary, or will occur as a practical matter, regarding preservation of electronic evidence on this laptop, the format of production of electronically stored information from the laptop, how to collect the information from the laptop (including whether the information is available through other means, such as third parties), and the timing of production. There may be additional electronic evidence preservation discussions that will come up from time to time.

**7.    DISCLOSURES**

NBME served its initial disclosures on May 3, 2021. FSMB served its initial disclosures on May 5, 2021. Plaintiff served his initial disclosures on May 26, 2021.

**8.    DISCOVERY**

Plaintiff's Position:

Pursuant to the Court's order, counsel met and conferred via Zoom videoconference to discuss outstanding discovery issues, including issues regarding written discovery and third-party subpoenas. Specifically, Defendants served request for admissions, interrogatories, and a request for production of documents on Plaintiff. Defendants have also issued several third-party subpoenas.

(A) Resolution of Issues Related to Third-Party Subpoenas

Regarding the subpoenas, Mr. Young and Mr. Burgoyne were able to come to an agreement regarding the issues discussed at the last Case Management Conference concerning Plaintiff's privacy and relevancy concerns regarding certain medical information. This agreement

1  contemplated that Mr. Young would request records on Plaintiff's behalf from certain health care
2  providers and would have a 14-day "first look" opportunity to redact and then provide the records
3  to Mr. Burgoyne along with a privilege log.

4  Since the last CMC, Mr. Young's office requested the records from the agreed-upon
5  health care providers. Only two providers have honored the requests for Plaintiff's medical
6  records: Kaiser Permanente and Jessie Comstock, a mental health therapist. Another provider,
7  Gerald Baltz, has lost his license, and the facility where he formerly worked ignored Mr. Young's
8  request. Mr. Baltz has also ignored Defendants' subpoena. Still another provider, psychologist Dr.
9  Elizabeth Greene, also ignored Mr. Young's request for records.

10  Although Kaiser complied with Mr. Young's request, they took much longer than
11  anticipated to send Plaintiff's medical records. When they did arrive, the Kaiser records contained
12  approximately 1,000 pages. The records contained many, extensive references to the kind of
13  sensitive, private medical information Mr. Young expressed concern about to Mr. Burgoyne and
14  the Court, triggering a need for redaction as counsel had agreed could happen subject to the Court
15  indicating it would review the records in camera if Defendants had concerns about over-
16  redaction.

17  Because of the number of pages to review, the extensive references to medical
18  information that has no bearing on this matter, and the fact Mr. Young was preparing for a jury
19  trial in another matter when the records arrive, Mr. Young sent the records to be summarized and
20  reviewed by a medical review consultancy company, Record Reform. Record Reform took longer
21  than expected to summarize the records and, initially, failed to redact any of the private, medical
22  information due to a miscommunication. Upon receipt of the records from Record Reform, and
23  seeing no redactions, Mr. Young requested that the reviewers go back through the records to
24  make the necessary redactions. Record Reform did so – at an additional cost to Plaintiff – but
25  they failed to catch many instances of private, sensitive medical information.

26  Upon receipt of the Kaiser records a second time from Record Reform, and seeing that the
27  redactions were insufficient, Mr. Young went through the records himself and made the
28  redactions that were necessary. Mr. Young has maintained an unredacted set of records for the

Court should an in camera review be required. Mr. Young also went through Jessie Comstock's records (approximately 250 pages) and made redactions, keeping a clean set for in camera review. These records were uploaded to Mr. Young Box.com account and shared with defense counsel on May 19, 2022. They were accessed that day by one of the defense attorneys, Aaron Ver.

Mr. Young has yet to receive copies of any of the records Defendants have subpoenaed, despite counsel's agreement to provide them and statements made at prior CMCs to this effect. Counsel exchanged emails about this on May 26, 2022, and Mr. Burgoyne indicated he will only provide copies once Plaintiff provides his responsive discovery documents. According to Mr. Burgoyne, this is the appropriate course of action so that Plaintiff does not produce documents Defendants already have in their possession via subpoena. Plaintiff's position is that it makes more sense to have Mr. Burgoyne provide copies of the many records he has subpoenaed so that Plaintiff does not have to go through the exercise of producing documents Defendants already have, which Plaintiff anticipates they already do have most of the documents he has.

(B) Plaintiff's Responses to Defendants' Discovery

Regarding Defendants' written discovery, Plaintiff fully responded to the request for admissions on December 16, 2021. However, Plaintiff served objections to Defendants' interrogatories and request for production of document. At the videoconference, counsel discussed Plaintiff's initial responses and agreed upon a further extension to provide amended responses to the interrogatories (February 15, 2022) and the document request (February 22, 2022).

Despite diligent efforts by Mr. Young, Plaintiff was unable to serve his First Amended Response to Defendants' Interrogatories, Set One until February 24, 2022. Further explanation is set forth below. As to the substances of Plaintiff's First Amended Response, Plaintiff contended that the number of interrogatories propounded by Defendants, including subparts, far exceeded twenty-five. Thus, Plaintiff provided partial responses in as much detail as Plaintiff was able to provide. Counsel met and conferred and resolved the numerical issue. Plaintiff has been continuing to work on providing full and complete responses to Defendants discovery.

1    There are reasons exist that have caused delay in responding to Defendants' discovery.
2    First, and foremost, the delay has been Plaintiff's work schedule in Virginia, which began in late
3    November 2021. Plaintiff was working full time at a psychiatric facility in Virginia. Plaintiff was
4    unavailable throughout most of the day. Due to his disabilities as identified by Dr. Swain and
5    others, Plaintiff has incredible difficulty keeping on top of some work-related responsibilities,
6    primarily patient charting. Plaintiff's method of mitigating his functional limitation is to arrive at
7    work hours earlier than he is scheduled to work, and he stays 2-3 hours later than he is scheduled.

8    Consequently, through the past several months, the earliest Mr. Young was ever able to
9    speak with Plaintiff by telephone is 6-7 p.m. PT, which is already 9-10 p.m. where Plaintiff was
10   located. The time available for productive conversation was substantially limited for both Plaintiff
11   and Mr. Young, and as a practical matter, these telephone conferences were difficult to schedule
12   in the first place. Obviously, Mr. Young cannot meet with Plaintiff in person either.

13   To address this problem, Plaintiff re-arranged his work schedule beginning in March or
14   April 2022 so that he had Fridays off. This allowed for further communications between Mr.
15   Young and Plaintiff, which has permitted Mr. Young to obtain the information he needed to
16   complete Plaintiff's discovery responses.

17   A further complicating factor, however, has been that Plaintiff's disabilities cause him to
18   experience profound difficulty reviewing, understanding, and focusing on the discovery
19   propounded by Defendants and providing responsive information in a timely fashion. While Mr.
20   Young certainly can appreciate Defendants' and Mr. Burgoyne's frustration, they have contended
21   from the outset of this case that Plaintiff is not even a "person with a disability" within the
22   meaning of the ADA. Therefore, they do not appreciate the significant difficulties Plaintiff and
23   Mr. Young have experienced trying to respond in a timely manner to their extensive requests for
24   information.

25   Mr. Young can attest from his own personal observation that Plaintiff has substantial
26   limitations affecting his ability to read, comprehend, interpret, and articulate information.
27   Although Mr. Young has impressed upon Plaintiff the significance of the discovery, the need for
28   timeliness, and the penalties for noncompliance, these admonitions cannot erase Plaintiff's

functional limitations, even if the logistical difficulties of time and distance could be overcome. In fact, it has been Mr. Young's experience that the more strident and urgent he becomes, the more limited Plaintiff's ability to assist Mr. Young becomes, much like the limitations he must experience on timed examinations.

Yet another complicating factor Mr. Young would like the Court to be aware of has been Mr. Young's trial schedule. As a reminder to the Court, Mr. Young took over another attorney's litigation practice in February 2021 when that attorney was diagnosed with late stage cancer. This dramatically increased Mr. Young's case load; in fact, it nearly doubled it overnight. The repercussions continue to be felt today in terms of Mr. Young's trial schedule, despite adding employees to Mr. Young's firm.

Since at least March 2022, Mr. Young has been involved in preparing another matter for jury trial on May 13, 2022. That matter involved numerous experts and many lay witnesses. It did not settle until nearly the first day of trial, and Mr. Young was involved in depositions almost daily for many weeks during that time. This led to unfortunate calendaring issues and other problems that have since been rectified. As soon as that matter settled, Mr. Young refocused his efforts on this matter and advised Mr. Burgoyne.

Mr. Young remains committed to working with Mr. Burgoyne to get the information he needs by the end of this week and has provided Mr. Burgoyne with the means to contact Mr. Young directly by cell phone any time he needs to communicate. Most of the information Mr. Burgoyne seeks from Plaintiff he is able to get – or has already received – via the third-party subpoenas Defendants issued. Mr. Young and Mr. Burgoyne have met via videoconference which has been productive overall. Now that Plaintiff will be physically close by Mr. Young's office, in-person meetings with Plaintiff will also be possible, and further delays minimized should there be additional discovery from Defendants.

(C) Plaintiff's Discovery to Defendants:

At the last CMC, the Court instructed counsel to meet and confer to discuss a new timeline for completion of discovery. On May 19, 2022, Mr. Young emailed Mr. Burgoyne and indicated that he would like to discuss dates for scheduling the depositions of the individuals

1  Defendants identified in their Initial Disclosures: Drs. Catherine Farmer, Kevin Murphy, and
2  George Litchford. Mr. Young also indicated a desire to discuss a new fact discovery cutoff date.
3  Mr. Burgoyne did not respond to either request, or indeed, he has yet to provide deposition dates
4  for these individuals. Currently, fact discovery cuts off on June 30, 2022. In light of this deadline,
5  on May 23, 2022, Plaintiff served notices of video depositions for Drs. Farmer, Murphy, and
6  Litchford, setting the depositions for June 27 (Farmer) and June 28 (Murphy and Litchford).

7      Mr. Burgoyne replied by email on May 23, 2022 with a revised schedule for completing
8  discovery, which Mr. Young agrees with. Unfortunately, Mr. Young did not see Mr. Burgoyne's
9  email before the deposition notices were sent the same day, or they would not have been sent. Mr.
10 Burgoyne has objected to the notices of deposition, despite Mr. Young subsequently advising Mr.
11 Burgoyne on May 24, 2022 by email that he would withdraw the notices and work with Mr.
12 Burgoyne to schedule the depositions at a mutually agreeable time.

13     It is unclear where this rift leaves the matter because Mr. Burgoyne has not provided new
14 deposition dates for the deponents. Mr. Burgoyne has gone to great lengths in Defendants'
15 portion of this CMC Statement to lift quotes from emails and other communications to portray
16 Mr. Young in a certain light when it would be more productive, as Mr. Young has suggested, for
17 counsel to speak to one another.

18     For example, Mr. Burgoyne points out he received an invitation to the video depositions
19 from the court reporter after he objected to them, implying that Mr. Young intended to go forward
20 with the depositions. The invitation was from the court reporter, not Mr. Young. Furthermore,
21 when the court reporter communicated with Mr. Burgoyne, Mr. Young had already told Mr.
22 Burgoyne he would reschedule the depositions. The court reporter has been notified. Moreover,
23 Mr. Burgoyne writes that he emailed Mr. Young to confirm the depositions were off calendar,
24 and that Mr. Young did not reply. In fact, Mr. Young replied on May 26, 2022 confirming the
25 depositions were off calendar. Much miscommunication is occurring because of missed emails or
26 email communications crossing each other, but emails appear to be Mr. Burgoyne's preferred
27 method of communication. Except in the beginning of this matter and except for a couple of
28 videoconferences, Mr. Burgoyne has rarely contacted Mr. Young telephonically to discuss this

matter despite repeated invitations to do so and being given Mr. Young's direct cell number on several occasions.

In addition to the deposition notices, Plaintiff served a set of interrogatories and a first document request on Defendant NBME on May 24, 2022. Hopefully, the depositions can be rescheduled, and discovery to FSMB is anticipated to follow in the next couple of weeks. Mr. Young will continue to work with Mr. Burgoyne regarding deposition scheduling, but Mr. Burgoyne needs to provide dates of availability.

Defendants' Position:

Discovery Requests to Plaintiff. Defendants served an initial set of discovery requests on Plaintiff on **October 27, 2021**, consisting of a set of interrogatories, requests for admissions, and document requests. **Seven months later**, and as of May 26, 2022, Plaintiff still has not fully responded to these discovery requests, despite twice being directed to do so by the Court. Specifically, Plaintiff has yet to respond to all of Defendants' interrogatories and has not produced *any* of his own documents in response to Defendants' document requests.

Defendants refer to their report in the March 3, 2022 Updated Joint Case Management Statement (Dkt. 64) for a more detailed discussion of the status of this issue as of that date, and by way of brief recapitulation and further update, state as follows:

Defendants served an initial set of discovery requests (interrogatories, requests for production of documents, and requests for admission) on Plaintiff on October 27, 2021.

Following a series of extension requests, on December 16, 2021, Plaintiff sent discovery responses that were plainly deficient. Among other things, Plaintiff's interrogatory responses contained no substantive responses and boilerplate objections to each request. He also provided boilerplate objections to all of Defendants' document requests, produced no documents, and did not state that documents would be provided by a specified date.

On February 25, 2022, Counsel for Plaintiff served a set of updated interrogatory responses, providing substantive responses to some of Defendants' interrogatories but objecting to responding to several interrogatories on the grounds that Defendants had exceeded the 25 interrogatories permitted under FRCP 33, when one accounted for subparts in the interrogatories.

On February 26, 2022, counsel for Defendants sent a meet-and-confer letter to Plaintiff's counsel, explaining why the objections stated in Plaintiff's updated interrogatory responses were unfounded. Plaintiff's counsel subsequently acknowledged that his objection to the number of interrogatories was unfounded.

In a March 2, 2022 email, counsel for Plaintiff wrote: "I am … not ignoring your meet and confer letters and the rest of your correspondence. I hope to get additional replies to you in the next day or two. For now, I will say I understand your position re: the discovery issues. As I believe I mentioned in one of my letters or emails, I do not expect you to have infinite patience. I am doing the best I can with the situation at hand, which is frustrating. I will respond in more detail under separate cover and redouble efforts."

In the Court's March 7, 2022 Order regarding the Baltz medical records dispute, the Court continued the then-scheduled March 10 case management conference to April 7, 2022, and stated: "In the meantime, the Court expects Plaintiff to have complied with Defendants' discovery requests."   Plaintiff did not meet the Court's expectation.

During the April 7, 2022 Case Management Conference, the parties further addressed Plaintiff's outstanding discovery obligations. Following the conference, the Court entered a Minute Entry which directed "Plaintiff to provide interrogatory responses and robust document production by April 14, 2022."

Plaintiff did not meet this Court-imposed deadline. He did not provide *any* updated interrogatory responses or any documents to Defendants by April 14.

On April 19, 2022, counsel for Defendants sent an email to counsel for Plaintiff regarding the discovery that was supposed to be provided by April 14. Counsel for Plaintiff did not respond to this email.

1   On May 10, 2022, counsel for Defendants sent another email to counsel for Plaintiff, asking about the overdue discovery as well as certain third-party subpoena materials that counsel for Plaintiff previously indicated would be sent by April 7 (but had not been provided). Counsel for Plaintiff did not respond to this email.

On May 19, 2022, counsel for Plaintiff emailed counsel for Defendants and indicated that he would be producing documents from two third-party sources (these are the documents that he previously stated would be produced on April 7). Counsel for Plaintiff also stated that he "will provide written discovery responses to you by tomorrow [May 20]." He asked about receiving copies of records Defendants obtained through third party subpoenas and about extending the fact discovery deadline.

Plaintiff did not provide written discovery responses on May 20, as he had said he would.

Plaintiff produced certain third-party documents on May 19 and 20.

On Monday, May 23, 2022, counsel for Defendants responded to the Thursday, May 19 email from counsel for Plaintiff. Defendants' counsel noted, among other things, that Defendants had not yet received Plaintiff's discovery responses. Counsel for Defendants also indicated that he would send a set of all documents received in response to third-party subpoenas after receiving Plaintiff's document production, and he provided a proposed revised schedule for completion of discovery, dispositive motions, and trial. Counsel for Defendants noted that there were many redactions in the third-party documents produced by Plaintiff, and that Defendants reserved their right to seek Court review of the redacted text if they conclude that is warranted.

Later in the day on May 23, Plaintiff's office served three notices of depositions on Defendants' counsel.

Counsel for Defendants emailed counsel for Plaintiff on May 24, noting that the deposition notices had been served without conferring with defense counsel regarding their availability or the availability of the witnesses, in contravention of the Court's rules and discovery guidelines (discussing Local Rule 30-1 and Guidelines for Professional Conduct No. 9). Counsel for Defendants also noted the Court's statement at the last CMC that she was prepared to modify the discovery cut-off date as the parties had suggested would be necessary. Therefore, there was

no scheduling requirement in the litigation that triggered a need for Plaintiff to unilaterally serve deposition notices. And Counsel for Defendants raised, once again, Plaintiff's outstanding discovery obligations.

Counsel for Plaintiff responded on May 24, saying that he had not seen the May 24 email from counsel for Defendants and felt that he could not wait any longer to serve the deposition notices. He stated, however, that he agreed with the proposed revised schedule and would work "to find dates and times that are amenable to everyone concerned." Counsel for Plaintiff also stated that he did not think "some form of quid pro quo for simply providing copies of records you have subpoenaed is appropriate given that I have supplied your office with the documents we received at this point." Counsel for Plaintiff also stated that "[o]ur discovery responses are complete; I am assembling the documents to send everything to you this week."

Counsel for Defendants replied on May 24, stating that it is reasonable to expect Plaintiff to first produce the documents that were requested roughly seven months ago before Defendants shared the documents they had received from various third-parties by serving third-party subpoenas, and further explaining the practical need to know which documents Plaintiff has in *his* possession and control rather than receiving documents from Plaintiff that might include copies of the documents that Defendants had obtained by way of third-party subpoenas and shared with Plaintiff. Counsel for Defendants noted that Plaintiff's counsel had said he would be "assembling the [Plaintiff's] documents to send everything to you this week," and stated that, "assuming this happens, and that we also receive the outstanding interrogatory responses, we should be able to send you copies of the documents we received in response to our third-party subpoenas soon, including those we received from the California Medical Board."

Later in the day on May 24, counsel for Plaintiff served interrogatories and document requests on NBME. A court reporting service also sent calendar invitations for the three depositions previously noticed by counsel for Plaintiff, to which Defendants' counsel had objected.

By email dated May 25, counsel for Defendants asked counsel for Plaintiff to confirm that he had informed the court reporter that the depositions had been cancelled, per the parties' email

communications on May 24. As of yet, Plaintiff's counsel has not responded to that email.

**9.      CLASS ACTIONS**

This is not a class action lawsuit.

**10.     RELATED CASES**

The parties have no new, additional information to provide to the Court that was not included in their initial Joint Case Management Statement.

**11.     RELIEF**

In addition to the information provided to the Court in the initial Joint Case Management Statement, the parties note that Plaintiff has entered into a stipulation regarding the emotional distress damages that the claims to have suffered, as follows:

1. Plaintiff is not claiming, and will not claim, to have suffered any emotional distress because of actions allegedly taken by the Defendants beyond so-called "garden variety" emotional distress, which "has been described as 'ordinary or commonplace emotional distress, that which is simple or usual.'" *Pringle v. Wheeler*, 2021 WL 1907824, at *3 (N.D. Cal. 2021) (citation omitted).

2. Plaintiff is not seeking, and will not seek, to recover any damages or other relief in this case for any type of alleged emotional distress beyond garden variety emotional distress.

3. Plaintiff will not offer or submit any testimony or other evidence that purports to establish that he suffered any type of emotional distress beyond garden variety emotional distress.

A copy of the Stipulation is attached as Exhibit 1 to this Statement.

**12.     SETTLEMENT AND ADR**

A settlement conference is set for September 20, 2022 at 9:30 a.m. before Magistrate Judge Sallie Kim.

**13.     CONSENT TO MAGISTRATE FOR ALL PURPOSES**

The parties previously consented to a magistrate judge conducting all further proceedings.

**14.     OTHER REFERENCES**

None.

**15.    NARROWING ISSUES**

The parties have no new, additional information to provide to the Court that was not included in their initial Joint Case Management Statement.

**16.    EXPEDITED TRIAL PROCEDURE**

The parties have no new, additional information to provide to the Court that was not included in their initial Joint Case Management Statement.

**17.    SCHEDULING**

The Court entered an Amended Pre-Trial Order on January 20, 2022, providing as follows:

Fact discovery cut-off:   June 30, 2022

Expert witness disclosures: July 30, 2022

Rebuttal expert witness disclosures: August 31, 2022

Expert discovery cut off:   September 30, 2022

Deadline to file dispositive motions:  October 31, 2022

Oppositions to dispositive motions:  December 1, 2022

Replies to dispositive motions:  December 16, 2022

Hearing on dispositive motions:  January 26, 2023

Pre-trial conference: March 23, 2023

Jury selection (if needed):  April 3, 2023

Jury trial (if needed):  April 3, 2023 - April 7, 2023

The parties now respectfully seek the following revised schedule, which realistically reflects the current status of discovery and keys off of the settlement conference scheduled in September:

Settlement Conference with Magistrate Judge:  September 20, 2022

Fact discovery cut-off:  September 30, 2022

Expert witness disclosures:  October 31, 2022

Rebuttal expert witness disclosures:  November 30, 2022

Expert discovery cut off:  December 30, 2022

1    Deadline to file dispositive motions:  January 31, 2023

2    Oppositions to dispositive motions:  February 28, 2023

3    Replies to dispositive motions:  March 15, 2023

4    Hearing on dispositive motions:  April 21, 2023

5    Pre-trial conference (if needed):  June 22, 2023

6    Jury selection (if needed):  June 26, 2023

7    Jury trial (if needed):  June 26, 2023-June 30, 2023

8  **18.   TRIAL**

9    If the case proceeds to trial, the parties estimate that the trial would last three to five full

10  days.

11  **19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

12    The parties have no new, additional information to provide to the Court that was not

13  included in their initial Joint Case Management Statement.

14  **20.   PROFESSIONAL CONDUCT**

15    All attorneys of record for the parties have reviewed the Guidelines for Professional

16  Conduct for the Northern District of California.

| | | |
|---|---|---|
| 1 | DATED: May 26, 2022 | **PERKINS COIE LLP** |
| 2 | | |
| 3 | | By  /s/ Robert A. Burgoyne |
| 4 | | Aaron J. Ver<br>Robert A. Burgoyne<br>Caroline M. Mew |
| 5 | | |
| 6 | | Attorneys for Defendants<br>NATIONAL BOARD OF MEDICAL |
| 7 | | EXAMINERS, and FEDERATION OF<br>STATE MEDICAL BOARDS, INC. |
| 8 | DATED: May 26, 2022 | **YOUNG LAW GROUP** |
| 9 | | |
| 10 | | By   /s/ Eric G. Young |
| 11 | | Eric G. Young |
| 12 | | Attorneys for Plaintiff<br>CORNELL WELLS, JR. |